662 A.2d 645

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Percy LEE, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1995.

Decided July 21, 1995.

264

James S. Bruno, Philadelphia, for Percy Lee.

Catherine Marshall, Ronald Eisenberg, and Norman Gross, Philadelphia, for the Com.

Robert A. Graci, Harrisburg, for Attorney General's Office.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

NIX, Chief Justice.

Appellant, Percy Lee, was convicted by a jury of two counts of murder of the first degree [1] and two counts of possession of an instrument of crime.[2] At the conclusion of the penalty phase of Lee's trial, the jury returned a sentence of death for each of the two murder convictions. Pursuant to 42 Pa.C.S. § 9711(h)(1), we have jurisdiction to review this direct appeal of Lee's conviction and sentence.

1. 18 Pa.C.S. § 2502(a).
2. 18 Pa.C.S. § 907.

Lee's conviction resulted from an incident that occurred on February 27, 1986, in which he and his accomplice, Russell Cox, entered the apartment of Evelyn Brown and killed both her and her daughter. Lee, his girlfriend, and his child, had lived with Mrs. Brown and her four children for approximately one year before Mrs. Brown asked him to leave. On February 26, 1986, between the hours of 7:00 p.m. and 8:00 p.m., Lee and Cox knocked on the front door of the Browns' apartment and asked to use the telephone. After Sonya Brown, one of Mrs. Brown's daughters, refused to let him in, Lee repeatedly kicked and banged on the door for several minutes. Lee then wrote a message with a magic marker on door which read, "All you bitches, hit man Butter."

Lee and Cox left, but returned to the Browns' apartment later that evening. At approximately 2:00 a.m., Denise Williams, a neighbor of the Browns, saw the two men standing outside the Browns' front door. Williams observed Cox conversing through the closed door and heard the voice of one of the female occupants of the apartment while Lee stood to the side with his back against the wall, outside the view of the peephole in the door.

At approximately 3:30 a.m., Lee and Cox went to the apartment of a man named Samuel Gilbert, who lived in the same apartment building as the Browns. Gilbert had known Lee and his mother since Lee was a child, and Lee had occasionally stayed with Gilbert after he was evicted from the Browns' apartment. Lee awoke Gilbert and told him, "I did something bad." (N.T. 5/1/87, 1075–76). He then admitted, "I stabbed Evelyn." (N.T. 5/1/87, 1076). Lee then took some clothes that he had left at Gilbert's apartment, put them in a bag, and said that he was going to his mother's house.

The police arrived at the Browns' apartment at 8:40 a.m. that morning.[3] They found the body of Evelyn Brown in one

---

3. It is unclear from the record who called the police. Sonya Brown, who was on an overnight babysitting job at a neighbor's house, testified that she received a call from her cousin Tracy informing her that her mother and sister were dead. She further testified that she did not know who called the police.

of the bedrooms of the apartment. Her hands and feet had been tied behind her back and she was in a kneeling position with her back against the bed. A pair of panties had been stuffed into her mouth. Mrs. Brown had been stabbed forty-eight times, primarily in the face, neck, and chest, with a pair of scissors and a knife.

In another bedroom, police found the body of Tina Brown, the seventeen year-old daughter of Evelyn Brown. Tina Brown's hands were bound behind her back, and a cloth noose had been tied around her neck. She had been raped and then stabbed to death with a knife and scissors. A total of fifty-three puncture, stab, and knife wounds to the head, neck, and chest were reported by the medical examiner.

Police discovered other physical evidence at the crime scene. A bar of blood-stained soap was recovered from a bathroom sink. There were also two playing cards, an ace and a jack, that were lying face up on a pillow next to the body of Evelyn Brown.

Later that same day, Samuel Gilbert informed Philadelphia homicide detectives of Lee's admission. Lee was later arrested at his mother's home, and a search warrant for the premises was executed. The police recovered two knives, a pair of scissors, and various items of clothing that were removed from Lee's person. Although it was never established that the knives and scissors were actually used in the commission of the killings, they were consistent with the types of wounds inflicted upon the two victims. In addition, lab analysis of Lee's clothes confirmed that human blood was present on his pants and sneakers; however, there was not a sufficient quantity of blood to determine a blood type. Likewise, a blood type could not be ascertained from the soap obtained from the crime scene because the substances in the blood that would have allowed an identification had been destroyed by the soap.

Lee and Cox were tried jointly before a jury. As noted previously, Lee was convicted of two counts of murder of the first degree and possession of an instrument of crime. At the

conclusion of the penalty phase, the jury found three aggravating circumstances[4] and four mitigating circumstances.[5] After weighing the aggravating circumstances against the mitigating, the jury returned a sentence of death for each of the two murder convictions. Post-verdict motions were filed by trial counsel; however, new counsel was appointed and supplemental motions alleging ineffective assistance of counsel were filed. All post-verdict motions were subsequently denied, and this appeal followed.

Although Lee has not specifically challenged the sufficiency of the evidence supporting his two first degree murder convictions, we have nonetheless independently reviewed the evidence pursuant to the standard established in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). When viewed in the light most favorable to the Commonwealth as verdict winner, the evidence, and all reasonable inferences derived therefrom, must support the jury's finding of guilt beyond a reasonable doubt. *Commonwealth v. Rhodes*, 510 Pa. 537, 539–40, 510 A.2d 1217, 1218 (1986). When viewed in this light, Lee's admission and the totality of the circumstantial evidence set forth above clearly support the jury's verdict in this case. We therefore proceed to address Lee's allegations of trial error and trial counsel's ineffectiveness.

Lee first contends that the municipal court judge who presided at his preliminary hearing erroneously refused to

4. The aggravating circumstances were: that the defendant committed a killing while in the perpetration of felony, 42 Pa.C.S. § 9711(d)(6); that the offense was committed by means of torture, 42 Pa.C.S. § 9711(d)(8); and that the defendant had been convicted of another offense for which a sentence of life imprisonment or death could have been imposed, 42 Pa.C.S. § 9711(d)(10).

5. The four mitigating circumstances were: that the defendant had no significant history of prior criminal convictions, 42 Pa.C.S. § 9711(e)(1); that the defendant was under the influence of extreme mental or emotional disturbance, 42 Pa.C.S. § 9711(e)(2); the age of the defendant at the time of the crime, 42 Pa.C.S. § 9711(e)(4); and other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense, 42 Pa.C.S. § 9711(e)(8).

recuse himself after presiding over the preliminary hearing of Lee's co-defendant, Russell Cox, in which Cox's confession was admitted. Lee additionally argues that there was insufficient evidence presented at the preliminary hearing to establish probable cause that he committed any crime with respect to Tina Brown. We find both of these claims meritless.

The preliminary hearings for both Cox and Lee were held on the same day. Due to Lee's unavailability, Cox's preliminary hearing was first. The Commonwealth's only witness at this hearing was Homicide Detective Gerald Nachurski who read Cox's statement to the police into evidence. Cox's unredacted statement fully implicated Lee in the rape and two murders.

Later that same day, Lee's preliminary hearing was held before the same judge. Prior to the hearing, Lee's counsel moved to have the judge recuse himself because he had already heard Cox's unredacted statement which implicated Lee. That motion was denied and the hearing was held.

Samuel Gilbert was the sole witness presented by the Commonwealth at Lee's preliminary hearing. Gilbert's testimony consisted primarily of Lee's admission that he killed Evelyn Brown. At the conclusion of the hearing, the presiding judge found probable cause to hold Lee over for trial for the deaths of both Evelyn Brown and Tina Brown. It is Lee's position that insufficient evidence was presented to establish a *prima facie* case with respect to the homicide of Tina Brown. Lee also maintains that the presiding judge must have considered Cox's statement implicating Lee in the murder of Tina Brown in order to justify the decision to hold him for trial on that charge because there was no evidence presented that he was involved in that killing.

In *Commonwealth v. Ballard,* 501 Pa. 230, 460 A.2d 1091 (1983), this Court held that "[a] finding at a preliminary hearing that sufficient evidence exists to require a defendant to stand trial is not subject to review if there has been a subsequent independent judicial judgment that there is sufficient evidence to require the defendant to stand trial." *Id.* at

233, 460 A.2d at 1092. Thus, Lee's adjudication of guilt renders moot any allegation that the Commonwealth failed to establish a *prima facie* case with respect to the homicide of Tina Brown. *See also Commonwealth v. McCullough*, 501 Pa. 423, 461 A.2d 1229 (1983) (the fact that the Commonwealth did not establish a *prima facie* case of robbery at the defendant's preliminary hearing was immaterial where the Commonwealth met its burden of proving the underlying offense at trial beyond a reasonable doubt). The Commonwealth clearly met its burden of proving the offense beyond a reasonable doubt in this case as evidenced by the jury's determination of Lee's guilt for the murder of Tina Brown. Moreover, assuming *arguendo* that the presiding judge should have recused himself from the preliminary hearing, the jury's guilty verdict renders harmless any allegation of such impropriety. Accordingly, Lee's arguments concerning the defects in his preliminary hearing must be rejected as meritless.

■ Lee next alleges that he was denied due process when the trial court denied his request to be tried separately from his co-defendant. In furtherance of this claim, Lee asserts that it was his intention to testify at trial but did not because he and Russell Cox did not want to present inconsistent defenses. Additionally, Lee claims that he was prejudiced by the admission into evidence of three of Cox's statements to police which implicated Lee in the killings. We conclude that the trial court's denial of Lee's motion for severance did not constitute an abuse of discretion, and thus, he is not entitled to relief.

■ It is well established that a motion for severance is addressed to the sound discretion of the trial court, and that its decision will not be disturbed absent a manifest abuse of discretion. . . .

Although the possibility of conflicting defenses is a factor to be considered in deciding whether to grant severance, it is clear that more than a bare assertion of conflict is required. "The mere fact that there is hostility between defendants, or that one may try to save himself at the expense of another, is in itself not sufficient grounds to

require separate trials." Further, "[d]efenses become antagonistic only when the jury, in order to believe the essence of the testimony offered on behalf of one defendant, must necessarily disbelieve the testimony of his co-defendant."

*Commonwealth v. Jones*, 530 Pa. 591, 602, 610 A.2d 931, 936 (1992) (citations omitted). It has also been held that a joint trial is not only permissible, but advisable, where multiple defendants are charged with participation in the same criminal acts and much of the same evidence is necessary to prove the Commonwealth's case against each defendant. *Commonwealth v. Jackson*, 451 Pa. 462, 464, 303 A.2d 924, 925 (1973); *Commonwealth v. Kloiber*, 378 Pa. 412, 415, 106 A.2d 820, 823, *cert. denied*, 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954). The policy underlying the preference for a joint trial is the gain in judicial economy where the added costs of a second trial and the time-consuming duplication of evidence can be avoided. *Commonwealth v. Patterson*, 519 Pa. 190, 197, 546 A.2d 596, 600 (1988). The trial court was mindful of this objective when it considered the motion for severance:

> Even though a joint trial was ordered, the public expended a substantial part of its scarce judicial resources by tying up one judge for one trial for a period of over six weeks. The grant of a motion for severance augured nightmarish consequences to the citizens and judges here in Philadelphia. In the event of a severance, there would have been two additional trials, possibly being conducted simultaneously, with the increased expenditure of judicial resources and the taxpayers' money. If these cases had been tried separately, there was a strong likelihood that two judges with two separate juries would have engaged in two separate trials which would have consumed almost three months of time in the same or different courtrooms. Thus, a consolidation of these cases was mandated by judicial and public necessity.

*Commonwealth v. Lee*, Nos. 8605–1163, 1164, 1166, and 1168, slip op. at 9–10 (C.P. Philadelphia County Jan. 14, 1994).

In the instant case, both Lee and Cox were charged with the murders of the same two victims at the same time and place. Absent any prejudice to either defendant, the facts of this case weigh in favor of a joint trial. Lee maintains, however, that he was prejudiced by the trial court's denial of his motion for severance. He contends that if he had testified, he would have exculpated himself by inculpating Cox for the rape and murders. He claims that he and Cox entered into a pact not to testify because neither one wanted to be inculpated by the testimony of the other. Thus, Lee equates the trial court's refusal to sever the trial as an infringement of his right to testify.

We note that Lee has not offered anything other than conjecture and speculation to support his assertion that his invocation of his Fifth Amendment right not to testify at trial was predicated upon his covenant of silence with co-defendant Cox. Furthermore, neither defendant testified at trial, and Lee's defense was based on a strategy of impeaching the credibility of the Commonwealth's witnesses and offering alternative explanations for the circumstantial evidence. Cox likewise pursued a similar strategy. Clearly, the defenses presented by the two defendants did not approach the level of antagonism that necessitates severance. *See Commonwealth v. Chester,* 526 Pa. 578, 590, 587 A.2d 1367, 1373 (1991).

Lee also claims that the trial court's denial of his motion for severance resulted in prejudice and the deprivation of his Sixth Amendment right of confrontation. Lee cites the seminal case of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in support of his assertion that his trial should have been severed so he could avoid the admission at trial of his co-defendant's redacted statements to police. Although Lee concedes that the statements by Cox were redacted by replacing Lee's name with the letter "X",[6] he argues that when read in light of the other evidence connect-

6. Lee does, however, claim that the prosecutor, while reading one of Cox's redacted statements in open court, either intentionally or accidently read the name "Percy" instead of "X." Our review of the record reveals that this allegation is meritless. (N.T. 5/5/87, 1284–86).

ing him with the crimes, the statements identify him as the other perpetrator.

In *Bruton, supra,* the United States Supreme Court held that a defendant's rights under the confrontation clause of the Sixth Amendment are violated when a non-testifying co-defendant's confession naming him as a participant in the crime is admitted at their joint trial. Applying the principles articulated in *Bruton,* this Court approved of redaction as a way of introducing a co-defendant's confession at a joint trial while protecting a defendant's Sixth Amendment right to confrontation. *Commonwealth v. Johnson,* 474 Pa. 410, 378 A.2d 859 (1977). Thus, "[i]f a confession can be edited so that it retains its narrative integrity and yet in no way refers to defendant, then use of it does not violate the principles of *Bruton." Id.* at 412, 378 A.2d at 860. Further, in *Commonwealth v. Chestnut,* 511 Pa. 169, 512 A.2d 603 (1986), we rejected a blanket rule which would prohibit the introduction of a redacted confession which refers to the defendant by "contextual implication." *Id.* at 174, 512 A.2d at 605.

There is no dispute that Cox's statements admitted at trial were redacted and contained no explicit references to Lee. Our review of the record reveals that the Commonwealth presented sufficient independent evidence of Lee's guilt such that even if Lee was implicated by context, the result was harmless error. *See Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972) (even if admission of co-defendant's statement had violated *Bruton,* its admission was harmless in view of the overwhelming independent evidence of defendant's guilt); *accord Commonwealth v. Wharton,* 530 Pa. 127, 607 A.2d 710 (1992). Finally, the trial court gave a limiting instruction in its charge to the jury which cautioned that Cox's statements were to be considered as evidence against him alone. (N.T. 5/18/87, 2052, 2054, 2066). Accordingly, we conclude that the trial court did not abuse its discretion in denying Lee's motion for severance.

Lee's next assignment of error concerns the trial court's admission of two knives and a pair of scissors that

were seized from his mother's home pursuant to a search warrant. Lee argues that the court erred in admitting these items on the basis that they constituted irrelevant and inadmissible evidence because they could not be specifically linked to the two murders. This contention is wholly without merit. " 'The fact the accused had a weapon or implement suitable to the commission of the crime charged, such as a knife ... is always a proper ingredient of the case for the prosecution.' " *Commonwealth v. Yount*, 455 Pa. 303, 316, 314 A.2d 242, 249 (1974) (quoting 1 Wharton's Criminal Evidence § 157 at 289–90 (13th ed. C. Torcia 1972)). This court has repeatedly held that the prosecution need not establish that a particular weapon was actually used in the commission of a crime in order for it to be admissible at trial. *Commonwealth v. Thomas*, 522 Pa. 256, 561 A.2d 699 (1989); *Commonwealth v. Clayton*, 516 Pa. 263, 532 A.2d 385 (1987), *cert. denied*, 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988); *Commonwealth v. Brown*, 467 Pa. 512, 359 A.2d 393 (1976); *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974); *Commonwealth v. Ford*, 451 Pa. 81, 301 A.2d 856 (1973). The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime. *Commonwealth v. Thomas*, 522 Pa. at 273, 561 A.2d at 707. "Moreover, the admission of such demonstrative evidence is a matter within the discretion of the trial judge and, absent an abuse of his discretion, his decision must stand." *Id.*

In the instant case, Dr. Paul Hoyer, the assistant medical examiner who conducted the post-mortem examination of the two victims, testified that the scissors and one of the knives seized from Lee's mother's house were consistent with the puncture and stab wounds inflicted upon the victims. (N.T. 4/30/87, 950–51, 1003–04). In addition, one of the police officers who executed the search warrant on Lee's mother's house testified that he saw Lee in the bedroom and kitchen, the rooms from which the knives and scissors were seized. (N.T. 4/28/87, 610–15). The record contains ample evidence demonstrating that the Commonwealth laid a foundation to

justify the inference that the scissors and knife seized by police could have been the murder weapons. We therefore conclude that the trial judge did not abuse his discretion in allowing their admission at trial.

Lee's next contention is that the trial court erred in failing to exclude testimony by the assistant medical examiner concerning post-mortem anthropophagia, damage that results from insects biting human skin. Lee maintains that this testimony was irrelevant and its admission was unduly prejudicial. He further argues that this testimony was elicited purposefully to inflame the passions of the jury and therefore constitutes prosecutorial misconduct.

The medical examiner referred to post-mortem anthropophagia in the context of describing the various external wounds that he observed during the post-mortem examination of Evelyn Brown. (N.T. 4/30/87, 991–94). Both defense counsel objected to this testimony. The trial court sustained the objection and thoroughly cautioned the jury that such testimony should be disregarded. (N.T. 4/30/87, 999–1000). The court later instructed the jury that it could not consider in its deliberations any evidence that it was previously told to disregard. (N.T. 5/18/87, 2020). Lee claims that the trial court should have granted a mistrial because these cautionary instructions were insufficient to cure the alleged prejudice. We disagree and find that the cautionary instruction was sufficient to eradicate any prejudice that may have resulted. As the trial court observed,

the prejudicial impact of a specific incident must be gauged in the trial context in which it had occurred. In this case, this jury had been exposed to a vivid testimonial description, quite gory and macabre in nature, of the over 100 cutting wounds which had mutually caused the deaths of the victims in this case by exsanguination. Moreover, this jury had viewed photographs depicting the squalid and dirty conditions of the public hallways outside of and the interior bedrooms within the apartment complex in which the bodies of the deceased victims had been finally discovered. Indeed, when presented in the context of this otherwise

distasteful, but nonetheless admissible and relevant evidence [the assistant medical examiner]'s reference to the fact that the deceased's leg had been bitten by a cockroach or so did not prejudice this jury as to deny the defendant a fair trial.

*Commonwealth v. Lee*, Nos. 8605–1163, 1164, 1166, and 1168, slip op. at 27 (C.P. Philadelphia County Jan. 14, 1994). Accordingly, we conclude that the trial court did not err in overruling Lee's motion for a mistrial.[7]

Lee next argues that trial counsel was ineffective for failing to present character evidence. The threshold inquiry in a claim asserting trial counsel's ineffectiveness is whether the claim has arguable merit. *Commonwealth v. Pierce*, 515 Pa. 153, 158, 527 A.2d 973, 975 (1987). The paucity of facts set forth in support of this contention makes it evident that Lee is not entitled to relief.[8] "It is well-settled that the failure of trial counsel to call a particular witness does not constitute ineffective assistance unless there is some showing that the testimony of the absent witness would have been beneficial or helpful in establishing the asserted defense." *Commonwealth v. Durst*, 522 Pa. 2, 6, 559 A.2d 504, 506 (1989). Here, Lee has not even made an offer of proof that

7. We also decline to characterize the prosecutor's attempt to elicit the testimony in question as prosecutorial misconduct. The prosecutor indicated to the trial court that he intended to use the medical examiner's testimony to establish the approximate time of death of the victims. (N.T. 4/30/87, 996). On appeal before this Court, the Commonwealth represents that the prosecutor elicited the testimony "to show that the bodies had remained in place for an extended period, so as to establish defendant's opportunity to commit the crimes." Brief for Appellee at 30.

8. After devoting four pages to general citations concerning the test for ineffectiveness of counsel and the admissibility of character evidence, the totality of Lee's argument on this point consists of the following:

It is conceded that an evidentiary hearing was never held regarding the character witness issue in this matter. However, it is submitted that appellant had witnesses who would have testified. His mother was present throughout the trial.

This evidence would have been helpful in rebutting the Commonwealth's proof of a specific intent to kill on appellant's part.

It is submitted that trial counsel could have no reasonable basis for failing to present this evidence.

Brief for Appellant at 30.

would warrant an evidentiary hearing to determine whether there were witnesses that would have testified to his good character. He submits that "[h]is mother was present throughout the trial," but fails to assert that she would testify favorably on his behalf. Moreover, the bald assertion that there were other witnesses who would have testified is insufficient and fails to specifically state a basis upon which relief can be granted. *Id.; Commonwealth v. Clemmons,* 505 Pa. 356, 365, 479 A.2d 955, 959 (1984).

It is also noteworthy that the record contains defense counsel's reasons for failing to present character evidence. During a discussion in the trial judge's chambers, the following occurred:

> Mr. Grant [assistant district attorney]: I think we ought to put on the record, your Honor, that also that [sic] at the guilt phase of the trial, Mr. Brooks [defense counsel] indicated to me that he intended to present character testimony; that is, evidence of Mr. Lee's good character, at which point I told him that if he put Percy Lee on the stand or any witness to indicate his good character, I intended to bring in Percy Lee's brother—who incidentally happened to be the victim of being stabbed [sic] in the face by Mr. Lee—and his girl friend [sic] to indicate that he had bad character which was, I believe, the basis for Mr. Brooks' decision not to put forth that type of evidence; is that correct, Mr. Brooks?
>
> Mr. Brooks: That's correct.

(N.T. 5/22/87, 2434). We find that the facts of this case fall squarely within the holding of *Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373 (1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). In *Peterkin,* we found that counsel had a reasonable basis to refrain from presenting character witnesses where the potential harm from such evidence outweighed any benefit that might result from it. *Id.* at 318–19, 513 A.2d at 382–83. Assuming *arguendo* that character witnesses were available and willing to testify as Lee alleges, we find that counsel's unwillingness to present these witnesses was a reasonable trial strategy in view of the

278

potentially damaging character evidence that the Commonwealth intended to offer in response. *See Id.*

In his next allegation, Lee asserts that the trial court erroneously admitted eight color photographs [9] of the victims during the penalty phase of his trial. He argues that the inflammatory nature of the photographs outweighed any evidentiary value, and further, that the evidence itself was cumulative. We disagree and find that the trial court properly admitted the photographs during the penalty phase.

> Photographs of a murder victim are not *per se* inadmissible. It is the manner in which the corpse is displayed that causes photographs to be emotionally charged. The admission of such photographs is a matter within the sound discretion of the trial judge. The test for determining the admissibility of such evidence requires that the court employ a two-step analysis. First a court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. If an inflammatory photograph is merely cumulative of other evidence, it will not be deemed admissible.

*Commonwealth v. Chester,* 526 Pa. 578, 591–92, 587 A.2d 1367, 1373–74, *cert. denied,* 502 U.S. 849, 959, 112 S.Ct. 152, 422, 116 L.Ed.2d 117, 442 (1991) (citations omitted). During the guilt phase of Lee's trial, the Commonwealth presented black and white sketches of the victims drawn by a police artist. In addition, the assistant medical examiner used two mannequins to demonstrate the number and type of wounds that each victim received. There were no photographs presented during the guilt phase.

9. Although Lee asserts in his brief that eight photographs were admitted, the trial judge indicated in his opinion that six photographs were admitted. Our review of the record confirms that six photographs were admitted.

At the penalty phase, the Commonwealth presented six color photographs of the victims in order to prove beyond a reasonable doubt the aggravating circumstance of torture under 42 Pa.C.S. § 9711(d)(8). The Commonwealth submits that these photographs were used to illustrate the nature and extent of the wounds which evidenced the intentional and heinous infliction of substantial pain. Lee claims that the Commonwealth possessed black and white photos which could have been shown to the jury instead.[10] We note, however, that these black and white photographs were taken at the crime scene and showed the victims lying in pools of blood. The black and white picture of Evelyn Brown showed her body hogtied with a gag stuffed in her mouth. In contrast, the color photos shown to the jury depict the victims cleansed of blood in the wound areas and lying prone on the medical examiner's table. Furthermore, the trial judge instructed the jury that the photographs were to be viewed objectively for the limited purpose of determining whether the killings were committed by means of torture. (N.T. 5/21/87, 2274–76). In view of the subject matter and evidentiary value of the photographs, we conclude that their admission by the trial court did not constitute an abuse of discretion. *See Commonwealth v. Henry,* 524 Pa. 135, 569 A.2d 929 (1990), *cert. denied,* 499 U.S. 931, 111 S.Ct. 1338, 113 L.Ed.2d 269 (1991) (photographs of cuts and bruises on victim's body were admissible at penalty phase of defendant's trial because probative value of vicious nature of killing and prosecutor's theory that victim had been tortured outweighed any inflammatory effect).

Lee next argues that this Court should vacate his death sentence and impose a life sentence because the assistant district attorney, during his summation at the penalty phase, allegedly rendered his personal opinion as to the appropriate sentence. At one point during his closing argument, the assistant district attorney said, "Percy Lee, you deserve to

10. Lee also claims that by showing the color photographs, instead of the black and white photographs, the assistant district attorney's actions constitute prosecutorial misconduct. We find this contention completely baseless.

die." (N.T. 5/22/87, 2418). Our review of the record fails to substantiate Lee's claim that this comment was intended to be interpreted as the prosecutor's personal opinion.

> The prosecutor is permitted, by the terms of the statute, to argue in favor of the death penalty. 42 Pa.C.S. § 9711(a)(3). This rule recognizes the reality that the balance of principles governing the course of argument during the guilt phase of trial [is] altered during the penalty phase of trial. The prosecutor *must* be permitted to argue the appropriateness of the death penalty as applied to the circumstances because that is the only issue before the jury at the penalty phase of trial.

*Commonwealth v. Sneed,* 514 Pa. 597, 613, 526 A.2d 749, 757 (1987) (citation omitted). When viewed in the context of the entire summation, the comment by the assistant district attorney was not improper nor did it have the effect of diminishing the jury's objectivity concerning its sentencing duty as defined in the death penalty statute.[11] Accordingly, this claim does not warrant the grant of relief.

▮▮▮▮▮▮ In his penultimate allegation of error, Lee contends that the Commonwealth failed to present sufficient evidence to support the aggravating circumstance of torture. When reviewing a challenge to the sufficiency of the evidence, this Court must view the evidence, and all reasonable inferences that follow therefrom, in the light most favorable to the Commonwealth as verdict winner. *Commonwealth v. Rhodes,* 510 Pa. 537, 539–40, 510 A.2d 1217, 1218 (1986).

---

11. Lee fails to cite another portion of the closing argument where the assistant district attorney stated, "I say they should die." (N.T. 5/22/87, 2429). Following an objection by defense counsel, the court promptly admonished the jury that they were not to construe the prosecutor's comments as an opinion concerning the credibility or weight of the evidence. (N.T. 5/22/87, 2429). The assistant district attorney then advised the jury, "That's not my personal opinion. That's my opinion based on reading this law, knowing how it should be applied, and looking at the facts in this case, I say based on that, they should die." (N.T. 5/22/87, 2429–30). Based on the trial court's limiting instruction and the context of these comments, we conclude that this comment likewise does not entitle Lee to relief.

The Commonwealth's evidence consisted of the testimony of the assistant medical examiner, Dr. Paul Hoyer, who performed the autopsies of the two victims. Dr. Hoyer testified that some areas of the body, such as the hands and face, have many more nerve endings than other parts of the body, and therefore, are much more sensitive to pain. (N.T. 5/21/87, 2276). He further indicated that there were nine stab and slash wounds on the face of Evelyn Brown and six such wounds on the face of Tina Brown. (N.T. 5/21/87, 2277–78). Based upon the redacted confession of Russell Cox and evidence of bleeding from the wounds, it was Dr. Hoyer's opinion that the injuries to Tina Brown were inflicted while she was alive. (N.T. 5/21/87, 2281–83). Dr. Hoyer testified that forensic evidence revealed that Evelyn Brown was also alive when her facial wounds were inflicted. (N.T. 5/21/87, 2283–84). In view of the weapons used and the restraints placed upon the victims, Dr. Hoyer concluded that it would have been very easy to cause rapid death if the perpetrator had so intended. (N.T. 5/21/87, 2292). Accordingly, the nature and extent of the wounds to both the vital and non-vital parts of the body provide ample evidence in the record to support the jury's finding of the aggravating circumstance of torture.

 Finally, Lee argues that the trial court erred in permitting the jury to consider the rape of Tina Brown as an aggravating circumstance. Although Russell Cox was convicted of the crime, Lee points out that he was not, and thus, the jury should not have considered it as an aggravating circumstance. Although Lee was not charged with or convicted of rape, the death penalty statute does not require that a defendant be convicted of the substantive offense under the crimes code in order for the jury to consider it as an aggravating factor. If the legislature had intended that 42 Pa.C.S. § 9711(d)(6) be supported by a conviction, it would have made such a requirement explicit as it did with the other aggravating circumstances. See 42 Pa.C.S. § 9711(d)(9) ("The defendant has a significant history of felony convictions...."); 42 Pa.C.S. § 9711(d)(10) ("The defendant has been convicted of another Federal or State offense...."); 42 Pa.C.S.

§ 9711(d)(11) ("The defendant has been *convicted* of another murder...."); 42 Pa.C.S. § 9711(d)(12) ("The defendant has been *convicted* of voluntary manslaughter....").

Thus, the only relevant inquiry is whether there is sufficient evidence in the record to support the aggravating circumstance that the killing was committed while in the perpetration of a felony. Because it is our statutory duty to insure that the evidence supports each of the aggravating circumstances, we will proceed with a sufficiency review of all aggravating circumstances found by the jury. *See* 42 Pa.C.S. § 9711(h)(3)(ii).

Russell Cox's confession clearly establishes the commission of the rape of Tina Brown prior to her brutal murder. Cox's statement contained the following:

"X took Tina in the next bedroom and he told me to go up front to the living room. I was in the living room four or five minutes and he called me to come back. I went back to the second bedroom and I saw Tina on her back on the bed, her hands tied behind her back. She had a shirt on and a pair of panties. Then X took off her panties and told me to go ahead. Then I f____ed her."

(N.T. 4/29/87, 739). Based upon the verdict in the guilt phase, it is clear that the jury believed beyond a reasonable doubt that Lee was the unnamed accomplice in Cox's statement. In addition, Dr. Hoyer testified that evidence of semen was discovered in the vagina of the Tina Brown during the post-mortem examination. (N.T. 4/30/87, 970). Thus, the evidence that Lee was an accomplice in the rape of Tina Brown is sufficient to support the jury's finding of this aggravating circumstance. *See* 18 Pa.C.S. § 306; *Commonwealth v. Bradley*, 481 Pa. 223, 392 A.2d 688 (1978) ("Under our law it is now axiomatic that the actor and his accomplice share equal responsibility for the act.").

We have already considered and rejected Lee's challenge to the sufficiency of the evidence supporting the aggravating circumstance of torture. The only remaining aggravating circumstance is that under 42 Pa.C.S. § 9711(d)(10),

which provides: "The defendant has been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable...." Thus, where a defendant commits more than one first degree murder during a given episode, one murder constitutes an aggravating circumstance for the other. *Commonwealth v. Heidnik*, 526 Pa. 458, 587 A.2d 687 (1991); *Commonwealth v. Steele*, 522 Pa. 61, 559 A.2d 904 (1989); *Commonwealth v. Marshall*, 523 Pa. 556, 568 A.2d 590 (1989).

At the commencement of the penalty phase, all relevant and admissible evidence from the guilt phase was incorporated by the Commonwealth, including the verdicts of guilt for two counts of murder of the first degree. (N.T. 5/21/87, 2269). Each murder therefore serves as an aggravating circumstance for the other. Accordingly, there is sufficient evidence in the record to support the jury's finding of this aggravating circumstance.

Finally, our review of the record reveals that the sentence imposed by the jury was not the product of passion, prejudice, or any other arbitrary factor. The information compiled by the Administrative Office of Pennsylvania Courts indicates that the sentence imposed in this case is not disproportionate to the sentence imposed in similar cases.

Judgement of sentence affirmed.[12]

CAPPY, J. concurs in the result.

MONTEMURO, J., is sitting by designation.

12. The prothonotary of the Supreme Court is directed to transmit the full and complete record in this case to the Governor. 42 Pa.C.S. § 9711(i).