J-S15017-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1164 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 24, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0004919-2016

BEFORE:   BENDER, P.J.E., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                              FILED JUNE 18, 2020

Appellant, Charles Williams, appeals from the judgment of sentence entered on June 24, 2019.  We affirm.

The trial court ably summarized the underlying facts of this case:

> Lisa Habedana testified at trial that she watched two black men shoot at a car and run away.  She called 911 and told them a person may have been inside the car.  Next, Brian Kennelly testified that, while attending a family birthday party, he heard a white car running and saw two black men walking toward the car.  [45] minutes later, he returned to the area to retrieve his cell phone and observed that the same white car was still there.  When he returned once more to the area after the birthday party, he saw that white car had crashed into a curb, the passenger door was open and the body of a deceased man, later identified as Chauncy Howard, was leaning backward in the driver's seat.
>
> Detective Christopher Braden testified that he was investigating an unrelated offense when he heard gunshots.

_____

[*] Former Justice specially assigned to the Superior Court.

He was dispatched to the area of the fleeing suspects. He passed another officer while looking for suspects. He received a radio call from Officer Matt Smith for backup, with the call stating that the suspects were at gunpoint. Officer Smith testified that he responded to a shots fired call and while en route he received an update that males had fled the scene. He stopped and spoke with Jay Ashley who told Officer Smith that Ashley had seen two young black males running. Officer Smith next observed a red jeep with five black males. The jeep took off at a high rate of speed and ran a stop sign. Officer Smith engaged his lights and siren and pursued the vehicle. During this pursuit, Officer Smith observed the back left passenger of the jeep throw a gun out of the window. Two blocks later, the jeep made an abrupt stop and a passenger exited the vehicle and ran. With the assistance of other officers, Officer Smith secured the scene and recovered the gun. He also observed a bag in the car which appeared to him to contain narcotics.

Lorelei Como testified that she lived near the shooting and saw someone jump over her wall and hide on her porch. She called 911 and described the person on her porch as a young black male wearing dark pants and a dark hoodie. The police arrived shortly thereafter.

[Lieutenant] Kevin Faulds testified that he responded to the man on porch call at Como's residence and discovered Appellant hiding behind a bench on the porch. [Lieutenant] Faulds said that Appellant yelled, "I don't have a gun." [Lieutenant] Faulds observed that Appellant was looking from side to side for a possible escape route. Eventually, [Lieutenant] Faulds patted down Appellant and felt what he thought was a folding knife. The item was actually a loaded .380 caliber magazine. The officer also recovered Appellant's cell phone at that time. A canine officer, "Bruno," alerted to a nearby window well where the gun matching the magazine was recovered.

In addition, Detective John Godleski testified as to the evidence he recovered from the scene as part of his duties within the Mobile Crime Unit. [Detective] Godleski collected the weapon which had been thrown from the jeep and stated that a magazine with six live rounds was found in the gun. The gun from under the window well, a .380 Glock, was

collected and found to contain a magazine with only two rounds. He also recovered .380 and .40 [caliber] shell casings near the crashed white Chevy Malibu and a fired bullet from the victim's lap, along with heroin, marijuana, several phones, and $3253.37 in cash from inside the Malibu.

Dan Wolfe of the Allegheny County Crime Lab testified as an expert witness on gun shot residue. A gunshot residue kit was collected from Appellant and sent to the lab for testing. In Wolfe's expert opinion, Appellant was exposed to gunshot residue, meaning he either fired a gun, was near a gun that was fired[,] or came into contact with a surface that had residue on it. William Best, an expert on firearms and tool markings, testified that the Glock .380 was operable. Sara Bitner, an expert in forensic biology, testified that DNA was recovered from the Glock and that Appellant could not be excluded as a contributor to the DNA recovered. She further stated that only 1 in 584,800 African-Americans could not be excluded. She stated that she could not conclude a DNA match between the Glock and Appellant due to the presence of other DNA on the Glock. Dr. Willis Ennis, an expert in forensic patholog[y], determined the cause of death to be multiple gunshot wounds and the manner of death to be homicide.

Detective Ray Murray of the Computer Crime Unit testified that he ran a cell phone dump of the victim's phone which generated an 850 page report. Of particular note, the victim and Appellant exchanged text messages shortly before the victim was killed. The last message, "Come outside," was made from Howard's phone at 2:15 p.m. Appellant responded "ait" at 2:22 p.m. The homicide call came in at 2:35 p.m., [13] minutes later.

Rachel Harden testified that she and Howard were in a romantic relationship and that Howard was the father of her child. She testified that Howard was a drug dealer and that he used Appellant as one of his runners. She stated that Appellant and Howard knew each other well and that the two of them appeared in a rap video together. She testified that she told a detective on the date of the murder that Appellant and Howard had an argument the night before.

Trial Court Opinion, 9/17/19, at 3-5 (footnotes omitted).

The jury found Appellant guilty of third-degree murder, carrying a firearm without a license, possession of a firearm by a minor, and persons not to possess a firearm.[1]  On June 24, 2019, the trial court sentenced Appellant to serve an aggregate term of 260 to 520 months in prison, followed by three years of probation.

Appellant filed a timely notice of appeal.  He raises four claims on appeal:

> 1. Whether the evidence was sufficient to sustain the verdict when the Commonwealth failed to present any physical evidence or any credible evidence tending to establish every material element of the crimes alleged?
>
> 2. Whether the circumstantial evidence relied in support of the homicide charge was sufficient when the jury was forced to rely on mere speculation, conjecture and random choice to reach the verdict?
>
> 3. Whether the trial court abused its discretion in allowing the case to be decided by the jury when the verdict is contrary to the weight of the evidence?
>
> 4. Whether the trial court erred in denying [Appellant's] petition for writ of habeas corpus when the Commonwealth failed to present prima facie evidence of the essential elements of criminal homicide?

Appellant's Brief at 4 (headings and some capitalization omitted).[2]

_____

[1] 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), 6110.1(a), and 6105(a)(1), respectively.

[2] The trial court ordered Appellant to file a concise statement of errors complained of on appeal, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b).  Appellant complied with the order and, within the Rule

First, Appellant claims that the evidence was insufficient "to sustain the verdict when the Commonwealth failed to present any physical evidence or any credible evidence tending to establish every material element of the crimes alleged." Appellant's Brief at 4. We conclude that Appellant's claim on appeal is waived, as Appellant's Rule 1925(b) statement does not sufficiently identify the error or errors that Appellant intended to challenge on appeal.

As this Court has continuously held:

> If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. [Where a] 1925(b) statement [] does not specify the allegedly unproven elements[,] . . . the sufficiency issue is waived [on appeal].

Commonwealth v. Williams, 959 A.2d 1252, 1257 (Pa. Super. 2008) (quotations and citations omitted).

In this case, Appellant's Rule 1925(b) statement vaguely declares that the evidence was insufficient "to sustain the verdict when the Commonwealth failed to present any physical evidence or any credible evidence tending to establish every material element of the crimes alleged." Appellant's Rule 1925(b) Statement, 8/2/19, at 2. This statement fails to "specify the element or elements upon which the evidence was insufficient" to support Appellant's

_____

1925(b) statement, Appellant raised the same claims that are contained in his brief to this Court. See Appellant's Rule 1925(b) Statement, 8/2/19, at 1-2.

four convictions – and we must conclude that Appellant's first sufficiency of the evidence claim is waived on appeal. Williams, 959 A.2d at 1257.

Next, Appellant claims that the evidence was insufficient to support his third-degree murder conviction. We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Vargas, 108 A.3d 858, 867-868 (Pa. Super. 2014) (en banc), quoting Commonwealth v. Brown, 23 A.3d 544, 559–560 (Pa. Super. 2011) (en banc).

According to Appellant, the evidence is insufficient to support his third-degree murder conviction because "the jury was forced to rely on mere

speculation, conjecture and random choice to reach the verdict." Appellant's Brief at 16. This claim fails. As the trial court explained:

> when considered in the light most [] favorable to the Commonwealth, as the verdict winner, [the evidence is sufficient to support Appellant's third-degree murder conviction]. Cell phone evidence puts Appellant at the crime scene. Gunshot residue [was found on Appellant's person, Appellant's] DNA [was found on the discarded gun, Appellant was found in possession of a] .380 [caliber] clip with missing cartridges, [a] .380 [caliber firearm was] found discarded in the window well near where Appellant was hiding[, and .380 caliber cartridge casings were found at the murder scene]. All of this evidence] tend[s] to prove that Appellant possessed one of the two weapons involved in the homicide. Evidence of Appellant's attempt to flee, hide, and destroy evidence further support a finding of guilty. Text messages put Appellant in communication with the decedent and show that they planned to meet [around the time of the murder] and testimony provides a motive. Any challenge to the sufficiency [of the evidence] is without merit.

Trial Court Opinion, 9/17/19, at 6-7.

We agree with the trial court's succinct analysis and conclude that Appellant's sufficiency of the evidence claim thus fails.

For his third claim on appeal, Appellant contends that the jury's verdict was against the weight of the evidence. Appellant's weight of the evidence claim is waived, as Appellant failed to raise the claim before the trial court.

As our Supreme Court has explained:

> in a challenge to the weight of the evidence, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider de novo the underlying question of the weight of the evidence. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief

> will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. It is for this reason that the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

Commonwealth v. Rivera, 983 A.2d 1211, 1225 (Pa. 2009) (quotations and citations omitted).

A weight of the evidence challenge must first be raised with the trial court either before sentencing or in a post-sentence motion. Pa.R.Crim.P. 607(a). In this case, Appellant did not file a post-sentence motion and, after a thorough review of the record, we do not see where Appellant properly raised his weight claim before the trial court. Further, Appellant's brief does not specify where he supposedly raised his weight of the evidence claim to the trial court. See Pa.R.A.P. 2119(c) (declaring that, if reference is made to the record, "the argument must set forth . . . a reference to the place in the record where the matter referred to appears"); see also Commonwealth v. Harris, 979 A.2d 387, 393 (Pa. Super. 2009) ("[w]hen an allegation is unsupported any citation to the record, such that this Court is prevented from assessing this issue and determining whether error exists, the allegation is waived for purposes of appeal"). Thus, the claim is waived.

Finally, Appellant claims that the trial court erred when it denied his pretrial petition for writ of habeas corpus, where he contended that the case against him must be dismissed because the Commonwealth failed to present a prima facie case. This claim is moot, as the jury found Appellant guilty of crimes that included third-degree murder and we have concluded that the

evidence was sufficient to support Appellant's conviction on that charge. See Commonwealth v. Lee, 662 A.2d 645 (Pa. 1995) (defendant's adjudication of guilt rendered moot any allegation that Commonwealth failed to establish prima facie case of homicide at defendant's preliminary hearing); Commonwealth v. McCullough, 461 A.2d 1229 (Pa. 1983) (that the Commonwealth did not establish a prima facie case of robbery at the defendant's preliminary hearing was immaterial where the Commonwealth met its burden of proving the underlying offense at trial beyond a reasonable doubt).

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/18/2020