J-A26041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FRANK ENDSLEY SPRINGER | : | |
| | : | |
| Appellant | : | No. 1262 WDA 2023 |

Appeal from the Judgment of Sentence Entered September 29, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0000401-2023

BEFORE: BOWES, J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: January 28, 2025**

Frank Endsley Springer ("Appellant") appeals from the judgment of sentence imposed following his convictions for attempted murder, attempted kidnapping, and other offenses. Appellant challenges certain evidentiary rulings from his trial. After careful review, we affirm.

Our factual recitation comes from the notes of testimony from Appellant's jury trial. On January 8, 2023, the victim, home from college on winter break, went for a long run in her hometown of Ligonier when she encountered Appellant. N.T., 7/11/23–7/13/23, at 134-37. The victim testified that she noticed a car parked on the left side of the road, facing the wrong way, ahead of her on the roadway. *Id.* at 147. Appellant got out of this parked car, walked to the middle of the road in front of where the victim was running, and pointed a gun at her. *Id.* The victim tried to run away, but Appellant fired his gun into the ground around her feet. *Id.* at 149-50. The

victim panicked, and Appellant grabbed her phone from her hand and threw it into a nearby creek. *Id.* at 153. Then Appellant attempted to pull the victim into his car by her shoulder, keeping the gun pointed at her. *Id.* at 155. The victim refused to go quietly into Appellant's car, grabbing for the gun during a "tussle." *Id.* at 155-56. The gun went off again during this scuffle. *Id.* at 156.

As this was occurring, another car passed by and the victim made eye contact with the woman in the passenger's seat, crying for help. *Id.* at 159. The car continued down the road. *Id.* After the car passed, the victim started to pray and, when Appellant noticed what she was doing, he laughed at her. *Id.* at 160. Appellant then forced the victim to the ground, on her hands and knees, continuing in his attempt to force her into the car. *Id.* Then, the car that had passed by returned and parked nearby. *Id.* at 163. The victim was able to escape and run to the parked car, begging for help. *Id.* The couple inside the car invited the victim to get in, called 911, and then took her to meet with police. *Id.* at 164. This couple, along with the victim, testified at Appellant's trial.[1]

As authorities investigated this incident, they were able to obtain video from multiple sources in the area, which showed a vehicle suspiciously following the victim on the deserted streets as she ran. *Id.* at 218-36. They

---

[1] N.T. at 132-81 (testimony of the victim); *id.* at 181-94 and 194-207 (testimony of the couple from the second car).

were able to ascertain the registered owner of this vehicle, Appellant, and his home address. *Id.* at 231. When detectives arrived at Appellant's residence, they saw the car matching the victim's description parked outside. *Id.* at 272. Appellant then gave consent to search his vehicle. *Id.* at 274. Police found zip-ties in Appellant's car, on the front passenger seat. *Id.* at 105, 279. Moreover, police were able to link the tire patterns from Appellant's car to certain markings found next to the road at the incident location. *Id.* at 82-89, 94, 111-20. Through police photos taken during the search, the victim identified Appellant's car as the one involved in this incident. *Id.* at 286-87.

Appellant was charged with multiple offenses and proceeded to a jury trial. The jury convicted Appellant of attempted homicide, attempted kidnapping, two counts of aggravated assault, simple assault, terroristic threats, unlawful restraint, and recklessly endangering another person.[2] Following preparation of a pre-sentence investigation report, Appellant proceeded to sentencing on September 29, 2023. The court then imposed an aggregate sentence of 25 to 50 years of incarceration, followed by 12 months of reentry supervision. Appellant was also ordered to pay restitution, costs, and fees, and was awarded 259 days of credit time. Appellant did not file a post-sentence motion.

After sentencing, the trial court granted the motion filed by Appellant's trial counsel to withdraw, and current counsel entered his appearance for

_____

[2] 18 Pa.C.S. §§ 901(a) (two counts), 2702(a)(1), 2702(a)(4), 2701(a)(1), 2706(a)(1), 2902(a)(1), and 2705, respectively.

Appellant's appeal. Appellant subsequently filed a timely notice of appeal on October 20, 2023. Appellant also filed a timely statement of matters complained of on appeal pursuant to the trial court's order, and the trial court filed its opinion pursuant to Pa.R.A.P. 1925.

Appellant raises the following issues in this appeal:

1.   Did the trial court err by allowing the Commonwealth to elicit testimony from Detective [John] Swartz on re-direct examination which went beyond the scope of defense counsel's cross-examination of Detective Swartz?

2.   Did the trial court err in allowing the admission of the aforementioned testimony of Detective Swartz which relayed irrelevant and overly prejudicial evidence regarding the presence of firearms and ammunition unrelated to the crimes with which [Appellant] was charged?

Appellant's Brief at 3.

In evaluating Appellant's first claim, we first note that "[q]uestions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion." *Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa. Super. 2020). More specifically with respect to redirect examination,

[t]he scope of redirect examination is largely within the discretion of the trial court. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of the law. Moreover, when a party raises an issue on cross-examination, it will be no abuse of discretion for the court to permit redirect on that issue in order to dispel any unfair inferences. Furthermore, when a trial court indicates the reason for its decision[,] our scope of review is limited to an examination of the stated reason.

***Commonwealth v. Fransen***, 42 A.3d 1100, 1117 (Pa. Super. 2012) (*en banc*) (cleaned up).

The issue in this case arose during the examination of Detective Swartz, who was testifying about executing the search warrant on Appellant's home. During cross-examination of the detective, defense counsel asked:

> Q:  You had mentioned when you went up to the house, I think you said the first time that you were with, I believe, Detective Clark and Chief Matrunics.  Was Officer Berger also with you at any point?
>
> A:  He was with us that day.  I don't recall if he was there the first time.  I believe he came with the search warrant the second time.

N.T. at 124.  Thereafter, on redirect, the Commonwealth had the following exchange with Detective Swartz:

> Q:  Did you recover a -- during the search of the residence, did you recover a western-style revolver?
>
> A:  No handguns were found.
>
> Q:  Were any firearms found at the residence?
>
> [Defense counsel]:  Objection.  That's beyond the scope of cross.
>
> THE COURT:  I'll allow it.
>
> Q:  Did you find any firearms?
>
> A:  Yes, sir.
>
> Q:  Were they handguns?
>
> A:  There were no handguns.
>
> Q:  I guess we'll call them long guns.
>
> A:  There was one shotgun and two rifles.

*Id.* at 124-25. Detective Swartz also testified that when authorities searched the area outside of Appellant's residence, police found various spent 9 mm casings and 300 blackout rifle casings, although neither a 9 mm handgun nor a 300 blackout rifle had been found inside Appellant's home. *Id.* at 125.

In its opinion prepared pursuant to Pa.R.A.P. 1925, the trial court explained its reasoning for admitting the testimony as follows:

> This [c]ourt submits that it did not err by allowing the Commonwealth to question Detective Swartz regarding the firearms found at the residence after serving a lawful search warrant. First, allowing the testimony is in the discretion of the trial court. Though the Commonwealth did not ask about the firearms found at the residence in its case-in-chief, Defense Counsel re-opened the door to present evidence of the investigation when he asked Detective Swartz about visiting [Appellant] at his home and the investigation there. Part of that investigation was looking [for] a murder weapon, which at that time was based on the description by [the victim] who admitted that she 'did not know [her] guns.' Therefore, the Commonwealth's questions were within the scope of cross-examination. This permitted the Commonwealth to ask more questions to complete the record.

Trial Court Opinion ("TCO"), 12/22/23, at 16-17.

We agree with the trial court's assessment. Defense counsel opened the door to questions about the search of Appellant's residence when he asked about the search at Appellant's home. The Commonwealth was then permitted to complete the story of the investigation, including whether any weapons were found in the residence. The victim here was faced with being abducted and was afraid of being taken away by Appellant and killed; it was certainly reasonable for officers to assume that Appellant intended to return

with the victim to his residence. Thus, the investigating officers were tasked with determining whether any weapons were in the home which could be used against the victim. The trial court did not abuse its discretion in permitting the question.

Moreover, the trial court suggests that even if permitting the at-issue questions on redirect was error, it would be a harmless error. *Id.* at 17. The trial court notes that Detective John Clark testified that Appellant had admitted to owning shotguns and rifles. *See* N.T. at 280. More importantly, the trial court listed the copious, properly admitted and uncontradicted evidence of Appellant's guilt from his trial, including: testimony from the victim and the couple that rescued her (including the victim's identification of Appellant's car), Appellant's DNA being found on the victim's belongings, tire tracks like those made by Appellant's vehicle matching the ones found at the scene of the attempted abduction, surveillance video of Appellant's car following the victim for some time through town as she ran, and Appellant's statements to police. TCO at 17.

An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. *Commonwealth v. Story*, 383 A.2d 155, 164 (Pa. 1978). An error may be deemed harmless when the uncontradicted evidence of guilt is overwhelming, so that by comparison the error is insignificant. *Commonwealth v. Mitchell*, 839 A.2d 202, 214-15 (Pa. 2003). Further, we appreciate that the harmless error doctrine

recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

*Commonwealth v. Hamlett*, 234 A.3d 486, 491 (Pa. 2020) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)).

After review, we agree with the trial court that the evidence of Appellant's guilt was overwhelming, and this brief reference to Appellant's owning shotguns and rifles was insignificant in comparison. We are satisfied that the referenced testimony did not contribute to the verdict. Thus, any reference here, had it been deemed improper, would have been a harmless error. Appellant is not entitled to relief on this issue.

Appellant's second issue is related to his first. Appellant maintains that the trial court abused its discretion in admitting the evidence related to his owning shotguns and rifles, and this testimony caused him prejudice, because only a handgun was used in this incident. Appellant argues that the Commonwealth introduced the evidence related to unrelated weapons to improperly bolster its claim that Appellant had an intent to kill. Appellant maintains that he is entitled to a new trial based upon *Commonwealth v. Lee*, 662 A.2d 645 (Pa. 1995).

The appellant in *Lee* was convicted of two counts of murder in the first degree, among other offenses, after two women were found tied up and stabbed in their home. *Id.* at 659. One woman had been bound, gagged, and stabbed forty-eight times, primarily in the face, neck, and chest, with a

pair of scissors and a knife. *Id.* The other victim had also had her hands bound behind her back, had a cloth noose tied around her neck, and had been raped. *Id.* She also had a total of fifty-three puncture, stab, and knife wounds to the head, neck and chest. *Id.* Lee also confessed to a third party that he "did something bad" and stabbed one of the victims. *Id.* at 648.

On appeal, Lee maintained that the court abused its discretion in admitting into his trial two knives and a pair of scissors that had been seized pursuant to a search warrant from his mother's home, where Lee was arrested. Lee argued that these implements could not be specifically linked to the two murders, making them irrelevant and inadmissible. *Id.* at 652. In addressing this claim, our Supreme Court held:

> This contention is wholly without merit. The fact the accused had a weapon or implement suitable to the commission of the crime charged, such as a knife … is always a proper ingredient of the case for the prosecution. This [C]ourt has repeatedly held that the prosecution need not establish that a particular weapon was actually used in the commission of a crime in order for it to be admissible at trial. The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime. Moreover, the admission of such demonstrative evidence is a matter within the discretion of the trial judge and, absent an abuse of his discretion, his decision must stand.

*Id.* (cleaned up).

Considering the merits of Lee's claim, the Supreme Court noted that the medical examiner had testified that the scissors and one of the knives seized from Lee's mother's home were consistent with the puncture and stab wounds inflicted upon the two victims. *Id.* Further, Lee was found in the rooms where

the scissors and knife were seized. *Id.* Thus, our Supreme Court concluded that the Commonwealth had laid a foundation to justify the inference that the scissors and knife seized by police could have been the murder weapons. *Id.* Accordingly, the trial court did not abuse its discretion in admitting the evidence. *Id.*

Here, Appellant stresses that the victim was clear in her description of the handgun used during the incident, saying that it was a "matte black handgun," and that it was "an old western looking" weapon that "had a cylinder on it." N.T. at 150. As noted above, the detective was asked if he found a "western-style revolver" at Appellant's home. Appellant posits that there had been "little to no" evidence of his intent to kill the victim with the handgun found at the incident site, and that it was improper thereby to permit the Commonwealth to argue to the jury that these other weapons demonstrated an intent to kill. Appellant's Brief at 15.

The trial court analyzed this issue as follows:

This [c]ourt submits that it was within the discretion of the [c]ourt to allow the testimony about the firearms and casings that were and were not found at [Appellant's] home as a result of the lawful search warrant. Defense [c]ounsel re-opened the door to the investigation at [Appellant's] home. The line of questioning by the Commonwealth was relevant as law enforcement was looking for a specific murder weapon. [Appellant] admitted to owning firearms. Therefore, it would follow that the Commonwealth would ask these questions to complete the record about the firearms and ammunition found at [Appellant's] home.

TCO at 19. The trial court further expressed that, if it was error to admit this testimony, the error was harmless beyond a reasonable doubt. *Id.*

- 10 -

We agree with the trial court that the evidence of the long guns was admissible. Appellant is correct that **Lee** stands for the proposition that the prosecution must lay a foundation that would justify an inference by the fact-finder that the weapon was likely used in the commission of the crime. **Lee**, **supra**. It is also true that the victim here described the weapon used during her attempted kidnapping as an "old western looking" handgun, which is not a description applicable to a rifle or shotgun. However, the victim also testified that she was terrified to get into Appellant's car because he was trying to put her in the trunk and take her away. N.T. at 155. When asked why she was afraid to get into Appellant's car, the victim stated, "[I]f you get in the vehicle, I was afraid that he was going to take me away and kill me." **Id.** at 157. She further explained, "Because I knew if I got in the car, people – you disappear. You're never seen again, and you end up in a field[,] dead somewhere." **Id.** at 162. The victim recounted that, initially, when the car passed her on the road without stopping and she started to pray, Appellant laughed at her. **Id.** at 160. The victim then asked Appellant, "What do you want from me?" and Appellant stated that he wanted, "Nothing." **Id.** at 168. Clearly, the victim was afraid that this stranger, who followed her during her run, kept trying to get her into his car, and was not afraid of shooting his gun at her feet, would ultimately kill her. It was therefore relevant whether Appellant had weapons at his home which could have caused the victim's death. Thus, even though Appellant had only a handgun on him at the time of the encounter, the

Commonwealth provided enough of a foundation to show that the other guns were potentially a part of the crime.

Moreover, we also agree with the trial court that this evidence was harmless beyond a reasonable doubt. Any prejudice caused by the admission of these two long guns, which Appellant had admitted to owning, was *de minimus*. As noted in the first issue on appeal, the evidence against Appellant was not limited to his gun ownership, but involved video evidence, DNA evidence, tire track evidence, and identification by the victim and the couple that rescued her; in sum, the evidence was quite compelling. In other words, the properly admitted and uncontradicted evidence of Appellant's guilt was so overwhelming, and the prejudicial effect of this evidence was so insignificant by comparison that, had we found this reference to be error, we would also conclude that such error would not have contributed to the guilty verdict. Appellant is not entitled to relief on this issue. Finding no meritorious issues on appeal, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Bowes joins this memorandum.

Judge Beck files a concurring memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/28/2025

- 12 -