J-S09031-19

NON-PRECEDENTIAL DECISION — SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ISIAH MICHAEL STEVENS, | : | |
| | : | |
| Appellant | : | No. 1109 WDA 2018 |

Appeal from the Judgment of Sentence Entered July 18, 2018
in the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000473-2018

BEFORE:     PANELLA, P.J., LAZARUS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:
FILED APRIL 25, 2019

Isiah Michael Stevens (Appellant) appeals from the judgment of sentence imposed after he was found guilty of three counts of robbery and one count each of theft, recklessly endangering another person (REAP), terroristic threats and receiving stolen property. We affirm.

As a result of an incident that took place on February 7, 2018, [Appellant] was arrested and charged with[, inter alia, the aforementioned crimes].  At trial, the testimony and evidence established the following.

Yvonne Ramsey testified that she is 60 years old and works at a Long John Silver's establishment in Uniontown. She had been employed there for over 40 years and is currently a shift manager. Her duties include hiring staff, making food orders, overseeing audits, and taking care of bank deposits.

Ms. Ramsey knew [Appellant] because [Appellant] went to school with her youngest son.  [Appellant] also worked at Long John Silver's on two occasions. Most recently, he had worked there for about one year[,] from 2016 to 2017. Ms. Ramsey stated that

_____

* Retired Senior Judge assigned to the Superior Court.

she was the one who hired [Appellant], and that they worked side-by-side in the back. She even considered him a family friend.

While working at Long John Silver's, [Appellant] was the fry cook. He worked varying shifts, but normally worked from [9 a.m. to 4 p.m. or 4 p.m. to 11 p.m. Appellant] was terminated from his employment early in 2017.

About a year after [Appellant's employment] was terminated, on February 7, 2018, Ms. Ramsey arrived for work at about 8:45 [a.m]. She proceeded to go to the safe and set the safe because it has a time delay of ten minutes. She then opened up the different stations of Long John Silver's. At around 9[:00 a.m.], two other employees arrived; Ms. Ramsey let them in.

After that, the safe started beeping-signaling it was ready-so Ms. Ramsey went back to the safe. She then began to count the money and deposit it into a red envelope. There was $1,090.86. She placed the red envelope into her purse and told her employees she was going to the bank. This was all part of her normal, daily routine.

Ms. Ramsey then went to her car, which was parked in the drive-thru lane on the side of the restaurant[] right next to the exit door. She got into her car and put her purse on the passenger seat. The purse still contained the red envelope; the envelope contained the cash.

Ms. Ramsey heard footsteps. The next thing she knew, Ms. Ramsey was being pushed back against her seat by [Appellant. Appellant] said, "Give me your fuckin' purse." As he reached for the purse, the two of them struggled briefly for control and Ms. Ramsey suffered a cut to her thumb. When Ms. Ramsey saw that [Appellant] was holding a silver, six-inch steak knife with serrated edges, she feared for her life and then just handed [Appellant] the purse. He exited the car, went around the vehicle, and started to run off.

Ms. Ramsey knew who the assailant was while the heist was unfolding; she could see his face and his hazel eyes. She also knew him by the sound of his voice. [Appellant] was laying [sic] across her body in the car as he stretched to get the purse. His face was six inches from hers. Ms. Ramsey remembered [Appellant's] attire that day: he was wearing a black, hooded

- 2 -

sweatshirt with the hood up, black pants, dark shoes, and a red belt. He also wore latex gloves.

After [Appellant] took the purse and began running off, Ms. Ramsey screamed at him, "[Appellant], please don't do this." Ms. Ramsey ran back inside the store and immediately called her husband. She then called the police and told them what happened. The state police arrived. Ms. Ramsey gave a statement and told the investigating trooper that [Appellant] was the assailant.

Ms. Ramsey testified that her purse also had her wallet, sunglasses, medication, and other items inside. The cost of those items totaled approximately $800. She never got those back.

The Commonwealth also called Trooper Jason Ashton of the Pennsylvania State Police to testify. Trooper Ashton was the investigating officer in this case. After talking with [Ms. Ramsey], Trooper Ashton got an arrest warrant for [Appellant]. The Trooper also went to search the residence of [Appellant], located at 13 Front Street, Apartment 3 in Dunbar, Pennsylvania.

When he arrived at the residence, Trooper Ashton made contact with Ms. Ashley Breakiron, who also lived there. Ms. Breakiron was the girlfriend of [Appellant]. She gave written consent for Trooper Ashton to search the residence. Trooper Ashton proceeded to the kitchen where he found a variety of knives. There were six knives that fit into a butcher block. One slot in the block was missing a knife. The Trooper took pictures of the knife set with the missing knife.

There was other evidence in the testimony that corroborated [Appellant's] culpability in the theft. For example, Ms. Ramsey testified that when [Appellant] worked at Long John Silver's, he worked about three feet away from where she counted and deposited money each morning and that he had an opportunity to observe her. Trooper Ashton testified that right before this incident, [Appellant] had a vehicle impounded. Right after the incident, [Appellant] was able to get his car back for $230, paid for with cash by Ms. Breakiron.

Trial Court Opinion, 11/13/2018, at 1-4.

Following a jury trial, Appellant was convicted of the abovementioned crimes, and on July 18, 2018, the trial court sentenced Appellant to four and one-half to nine years of incarceration. Appellant did not file a post-sentence motion. This timely-filed appeal followed.[1] On appeal, Appellant presents one issue for our consideration: whether the trial court "erred in allowing the Commonwealth to introduce photographs and testimony regarding a missing knife from a knife set found in [Appellant's girlfriend's] residence?"[2] Appellant's Brief at 3 (unnecessary capitalization omitted).

Our standard of review for the admission of evidence is well-settled.

The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

Commonwealth v. Manivannan, 186 A.3d 472, 479-80 (Pa. Super. 2018) (citation omitted).

In support of his claim, Appellant sets forth the following argument in his appellate brief.

In the present case, the [trial c]ourt permitted the Commonwealth to introduce a photograph through the testimony

---

[1] Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

[2] At trial, Appellant conceded that he and his girlfriend, Ms. Breakiron, lived together at the Front Street apartment during the relevant period of time. N.T., 7/9/2018, at 72.

of Trooper [] Ashton showing a missing knife from a set of six knives that were found in a butcher block at [Ms.] Breakiron's residence. The Commonwealth through this photograph and testimony was attempting to draw the inference that the knife in the butcher block was used in the robbery. However, the Commonwealth provided no evidence at trial linking this missing knife as the weapon allegedly used in the robbery. Without such evidence there are countless reasons why a knife could be missing from a butcher block set besides the reason that the knife was used to commit a robbery. Therefore[, the trial court] erred in failing to sustain [defense counsel's] objection that the photograph showing a knife missing from butcher block as speculative, because the Commonwealth sought to unfairly prejudice [Appellant] by suggesting a decision to the jury on an improper basis—that the missing knife was used in the robbery when no evidence was provided to link the missing knife to the weapon used in the robbery.

Appellant's Brief at 7-8 (citation omitted).

In this case, in its case-in-chief, the Commonwealth, during Ms. Ramsey's testimony, attempted to introduce photographs taken by Trooper Ashton during his search of the apartment Appellant shared with Ms. Breakiron. N.T., 7/9/2018, at 34. These three pictures included two photographs of various-sized knives and one photograph of a butcher block with a missing knife, all which were found in Appellant's kitchen. See Commonwealth's Exhibits 1-3.

Before Ms. Ramsey viewed the photographs, Appellant requested a sidebar discussion, which the trial court allowed. Appellant explained to the trial court that the "photographs were taken from [Ms. Breakiron's] residence. Th[e Commonwealth] is trying to allege that a knife was missing from the set. It's purely speculative … [Ms. Breakiron has not] testified a knife was missing."

N.T., 7/9/2018, at 35. Appellant then told the trial court "[m]y objection would be that there is no foundation," i.e., the photographs could not be introduced during Ms. Ramsey's testimony because a proper foundation had yet to be established. Id. at 36. The Commonwealth and Appellant set forth their respective arguments.

Ultimately, the trial court determined that the Commonwealth would not be allowed to present the photographs through Ms. Ramsey, agreeing with Appellant that the Commonwealth could not "lay a foundation through [Ms. Ramsey] as a witness." Additionally, the trial court determined that it was "more appropriate to raise [this] circumstantial evidence through" Trooper Ashton's testimony. Id. at 37. Appellant did not raise any further objections.

The sidebar conversation concluded with a brief discussion regarding what Trooper Ashton could testify to with respect to the photographs. Among other things, the trial court agreed with Appellant that Trooper Ashton was prohibited from stating definitively that a knife was "missing." Id. at 38. The trial court also made it clear that Appellant could cross-examine Trooper Ashton to "dispel the inference that may be made" from the introduction of this evidence. Id. Appellant did not object to the trial court's ruling regarding the Commonwealth's ability to introduce the photographs through Trooper Ashton's testimony.

Trial continued and upon the conclusion of Ms. Ramsey's testimony, the Commonwealth called Trooper Ashton to the stand. The Commonwealth

questioned Trooper Ashton about the search of Appellant's apartment and the discovery he made in the kitchen with respect to the butcher block. Id. at 51-52. Then, the Commonwealth introduced photographs taken by Trooper Ashton, including one that showed the butcher block with one empty slot and another that showed several knives, some of which were identical matches to one another. Id. at 52-53. Trooper Ashton explained that he had searched the kitchen and was unable to find the knife that fit into the empty slot. Id. at 51. Regarding this evidence and its purported connection to the robbery, Trooper Ashton testified, inter alia, that he showed the photographs to Ms. Ramsey who immediately recognized one of the knives. Id. at 55. The photographs were later admitted into evidence and published to the jury. Id. at 56. No objection was made.

Upon review of the transcript from Appellant's trial, it is clear that Appellant's counsel did not object during Trooper Ashton's testimony nor did he object to the introduction of any photograph presented to Trooper Ashton or its subsequent admission into evidence. Id. at 56. "We have long held that [f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal." Commonwealth v. Thoeun Tha, 64 A.3d 704, 713 (Pa. Super. 2013) (citations and quotation marks omitted). Here, we find that by failing to lodge contemporaneous objections at the time Trooper Ashton made the purportedly objectionable statements or at the time the photographs were introduced through the Trooper's testimony, Appellant

waived his claim on appeal. See Commonwealth v. Cornelius, 180 A.3d 1256, 1261–62 (Pa. Super. 2018) (finding claim challenging denial of motion for mistrial waived where defense counsel failed to object at the time the alleged prejudicial statement was made); see also Commonwealth v. Tucker, 143 A.3d 955, 961 (Pa. Super. 2016) ("[T]he failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue.").

Even if we were to reach the merits of Appellant's claim, he would not prevail on appeal. Here, the trial court found "[t]he photograph of the knife set was relevant, was not unduly prejudicial to [] Appellant, and was properly authenticated." Trial Court Opinion, 11/13/2018, at 7. In support of its findings, the trial court set forth the following.

> [I]n Commonwealth v. Miller, 897 A.2d 1281, 1287-88 (Pa. Super. [] 2006), th[is Court] upheld the admission of photographs of a knife set with a knife missing [in Miller's murder trial]. In Miller, during the execution of a search warrant, police discovered a knife set in the trunk of [Miller's] vehicle; one of the knives was missing. Police took photographs of the incomplete knife set. The knife set and the photographs of the knife set were admitted as exhibit at trial, used as circumstantial evidence that [Miller] committed [the] murder with the missing knife. In holding that the evidence was admissible, th[is Court] stated[ the following.]
>
> Clearly, testimony presented with regard to a knife set, minus one, found in the trunk of [Miller's] car, was relevant, to show that [Miller] was in possession of a knife [that] could have been one of the murder weapons.
>
> The issue at hand is analogous to that in Miller. Here, Ms. Ramsey testified to being robbed at knifepoint by [Appellant]. She described the knife in detail, saying that it was a silver, six-inch

blade with serrated edges. When Trooper Ashton searched [Appellant's] kitchen, the [T]rooper found a knife set and butcher block for the knives. All of the knives were located expect for one. Further, the Trooper testified he looked everywhere in the kitchen- the sink, the drawers- for the missing knife that would have fit with the knife set. He did not find it. The Trooper also testified that the knife missing from the set should have been a six-inch blade.

Like Miller, the absence of one of the knives in [Appellant's] kitchen makes it more or less probable that the missing knife was used in the commission of the robbery. It is up to the jury to determine the weight and credibility of that evidence.

\* \* \*

There was also no unfair prejudice to Appellant in the admission of the photograph of the knife set. There is nothing inherently disturbing about a kitchen knife set that would inflame the minds and passions of a jury.

Trial Court Opinion, 11/13/2018, at 6-7 (citations omitted).

Our review of the certified record and applicable case law supports the trial court's determination. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401.

The fact the accused had a weapon or implement suitable to the commission of the crime charged, such as a knife … is always a proper ingredient of the case for the prosecution. [Our Supreme Court] has repeatedly held that the prosecution need not establish that a particular weapon was actually used in the commission of a crime in order for it to be admissible at trial. The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime. Moreover, the admission of such demonstrative evidence is a matter within the discretion of the trial judge and, absent an abuse of his discretion, his decision must stand.

Commonwealth v. Lee, 662 A.2d 645, 652 (Pa. 1995) (citations and quotation marks omitted).

In this case, the evidence presented at trial established that Ms. Ramsey was robbed at knifepoint by an assailant she immediately identified as Appellant, who was wielding a six-inch serrated knife. N.T., 7/9/2018, at 30-32. While searching the kitchen in Appellant's apartment shortly after the robbery, Trooper Ashton found a knife set with one knife unaccounted for. Id. at 51-53. Trooper Ashton opined that the missing knife would have a six-inch blade and would match other knives found in the kitchen. Id. at 54. Trooper Ashton testified that despite his search of Appellant's kitchen, he was unable to find the missing knife. Id. Notably, Trooper Ashton testified that after taking pictures of the knives and the knife set, he showed the photographs to Ms. Ramsey, who "immediately" pointed to one of the knives. Id. at 55.

In light of the foregoing testimony, we find the Commonwealth laid a proper foundation to justify the inference that the knife used in the robbery by Appellant was the missing knife from the set, and as such, determine that the photographs of the knives and the knife set constituted relevant circumstantial evidence. Therefore, we conclude that the trial court did not abuse its discretion in allowing the photographs to be entered into evidence. Accordingly, Appellant is not entitled to relief from this Court.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: _4/25/2019_