NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4669
_____

PERCY LEE,
                              Appellant

v.

ACTING SECRETARY SHIRLEY MOORE SMEAL,
PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA;
ROBERT COLLINS, SUPERINTENDENT OF THE STATE
CORRECTIONAL INSTITUTION AT FRACKVILLE
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-09-cv-04023)
District Judge: Honorable J. Curtis Joyner
_____

Argued September 13, 2011

Before:  RENDELL, JORDAN and BARRY, <u>Circuit</u> <u>Judges</u>

(Opinion Filed: October 6, 2011)
_____

Aren K. Adjoian, Esq.
Timothy P. Kane, Esq.    **[ARGUED]**
Defender Association of Philadelphia
601 Walnut Street
The Curtis Center
Philadelphia, PA  19106
    *Counsel for Appellant*

Joshua S. Goldwert, Esq.    **[ARGUED]**
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA  19107
  *Counsel for Appellees*

———————

OPINION OF THE COURT
———————

RENDELL, Circuit Judge.

Percy Lee appeals the District Court's denial of his habeas petition seeking collateral review of his 1987 conviction for first-degree murder in the Court of Common Pleas of Philadelphia County.  We have been greatly aided in this difficult case by the thorough Report and Recommendation of Magistrate Judge Elizabeth T. Hey, which was adopted by District Judge Joyner.  *See Lee v. Collins*, No. 09-4023, 2010 WL 5059517 (E.D. Pa. July 22, 2010).  Like Judge Hey, we conclude that the error raised by Lee, although of constitutional proportions, was harmless, and we will therefore affirm.

**I.**

Lee was tried jointly with co-defendant Russell Cox in April and May of 1987 for the murders of Tina Brown and her mother Evelyn Heath Brown, who were found dead of multiple stab wounds in their North Philadelphia apartment.  The statements of Lee's co-defendant, Cox, were introduced as evidence, over defense counsel's objection.  Lee's habeas petition raises the following single issue:

> Did the Confrontation Clause violations in this case have a substantial and injurious effect on Lee's murder convictions where the Commonwealth relied on the co-defendant's

2

unconfronted statements to establish and/or bolster every aspect of its case?

Lee's argument relies on the Supreme Court's opinion in *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny. *Bruton* held that a defendant's right to confrontation under the Sixth Amendment is violated when the state uses the extra-judicial statements of a non-testifying co-defendant to incriminate a defendant in a joint trial. *Bruton*, 391 U.S. at 135-36. *Bruton* noted that some trial courts had opted to redact incriminating statements as a way of avoiding the Confrontation Clause problem. *See id.* at 133-34 & n.10.

In 1987, shortly before Lee's trial, the Supreme Court decided *Richardson v. Marsh*, 481 U.S. 200 (1987). *Marsh* made clear that, in addition to forbidding the introduction of a "facially incriminating confession of a nontestifying codefendant," *id.* at 207, the Confrontation Clause also prohibits the government from seeking "to undo the effect of [a] limiting instruction by urging the jury to use [the co-defendant's] confession in evaluating [the defendant's] case," *id.* at 211. The Court left open the question whether "a confession in which the defendant's name has been replaced with a symbol or neutral pronoun" violates the Confrontation Clause.[1] *Id.* at 211 n.5.

---

[1] The Supreme Court resolved that question in *Gray v. Maryland*, 523 U.S. 185 (1998), holding that "[r]edactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration" also violate the Confrontation Clause, *id.* at 192. Because *Gray* was decided after the Pennsylvania Supreme Court addressed Lee's *Bruton* claim, however, we do not consider it in our analysis of whether the Commonwealth's adjudication of that claim involved an unreasonable application of "clearly established Federal law." *See* 28 U.S.C. § 2254(d)(1); *Greene v. Palakovich*, 606 F.3d 85, 94-95 (3d Cir. 2010) (holding that the

3

## II.

Here, the government introduced three out-of-court statements Cox gave to the police. All references to Percy Lee were replaced with "X" as the statements were read to the jury. Cox's statements described the events of the evening of the murders, some of which were corroborated and explained in more detail by other witnesses. Cox's statements, the only witness account of the murders themselves, described in detail the tying up of each woman, the rape of Tina, and the murders. Cox laid blame for the stabbings on "X." At one point, while using one of the statements to cross-examine a witness, the prosecutor slipped and, instead of saying "X," said the word "pers." After a sidebar discussion, the prosecutor substituted "person" instead of "X."

The prosecution's closing argument referred repeatedly to Cox's statements as persuasive evidence of Lee's guilt. When defense counsel objected, the trial court expressed surprise that the Commonwealth was undoing in argument what had been done by the redactions: "You're reading his statement and you're attributing his statement as placing everything on Lee despite the redactions." (App. 1034.) The prosecutor, seeming oblivious to the problems this presented, agreed that this was exactly what he intended: "As I have throughout my argument indicating [*sic*] that Mr. Cox has always tried to put this on the other person. And I argued to the jury the other person is Percy Lee . . . based on our evidence." (*Id.*) Despite this admission, the trial court denied Lee's counsel's motion for a mistrial. (App. 1034-35.)

---

date of the "relevant state-court decision" controls for purposes of determining what constitutes "clearly established Federal law" under § 2254(d)(1).

4

The charge to the jury was extensive and included lengthy instructions on conspiracy and accomplice liability. The judge made several references to the fact that the jury could consider Cox's statements as evidence of his guilt only, not Lee's. (App. 1059, 1061, 1064.)

The jury found both defendants guilty of first-degree murder and sentenced both to death.[2] Cox was also found guilty of rape.

On direct appeal to the Pennsylvania Supreme Court, Lee urged that the way the statements were used violated his Sixth Amendment right to confrontation under *Bruton*.[3] The court dismissed this issue cursorily because "the statements admitted at trial were redacted and contained no explicit references to Lee." *Commonwealth v. Lee*, 662 A.2d 645, 652 (Pa. 1995). The Court then continued: "Our review of the record reveals that the Commonwealth presented sufficient independent evidence of Lee's guilt such that even if Lee was implicated by context, the result was harmless error." *Id.* (citations omitted).

All state-court collateral relief sought by Lee thereafter was of no avail, and Lee filed a petition for a writ of habeas corpus in the District Court, based solely on the *Bruton* violation. The District Court referred the proceedings to Magistrate Judge Hey,

---

[2] Because Lee was 17 at the time of the murders, his death sentence was later vacated under *Roper v. Simmons*, 543 U.S. 551 (2005), and replaced with two consecutive life sentences, one for each of the two murders. *See Lee*, 2010 WL 5059517 at *3 & n.8.

[3] The government contends that Lee's habeas petition impermissibly asserts a new claim. This argument lacks merit, as Lee clearly objected to the use of the statements under *Bruton* and the resulting Sixth Amendment violation in his direct appeal. We therefore conclude that the claim was fairly presented to the relevant state court.

5

who, in a detailed Report and Recommendation, recommended that Lee's habeas petition be denied. Judge Hey concluded that the admission of Cox's statements and the prosecutor's use of those statements to incriminate Lee during his closing argument violated Lee's Confrontation Clause rights and that the Pennsylvania Supreme Court applied clearly established Federal law unreasonably by holding to the contrary. *Lee*, 2010 WL 5059517, at *12-13. She then held, however, that, applying the standard the Supreme Court first articulated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the error was harmless. 2010 WL 5059517, at *16.

Judge Hey concluded that "the evidence against Lee was strong enough, even apart from the evidence admitted in violation of *Bruton*, that the error did not cause actual prejudice." *Id.* at *13. While there may have been "some doubt" as to whether the jury would have convicted Lee without hearing Cox's statements, she concluded that doubt was not "grave." *Id.* at *16. Judge Hey nonetheless recommended that the District Court issue a certificate of appealability. *Id.* at *17. District Judge Joyner adopted the Judge Hey's Report and Recommendation, denied Lee's habeas petition, and issued a certificate of appealability.

**III.**

Under AEDPA,[4] the District Court could only grant Lee's habeas petition if it concluded that the state court unreasonably applied *Bruton* and *Marsh*, *see* 28 U.S.C. § 2254(d)(1), and we apply the same deferential standard on appeal, *see Thomas v. Horn*,

---

[4] AEDPA is the Antiterrorism and Effective Death Penalty Act of 1996, which is codified in relevant part at 28 U.S.C. § 2254(d).

6

570 F.3d 105, 113 (3d Cir. 2009) (because our review of district court's ruling on habeas petition without an evidentiary hearing is "plenary," "we review the state courts' determinations under the same standard that the District Court was required to apply"). As to the harmlessness of any error, however, we are to "perform our own harmless error analysis under *Brecht*"; we need not separately "review the state court's harmless error analysis under the AEDPA standard." *Bond v. Beard*, 539 F.3d 256, 275-76 (3d Cir. 2008) (citing *Fry v. Pliler*, 551 U.S. 112, 121 (2007)).

## A.

We agree with the District Court that the Pennsylvania Supreme Court unreasonably applied *Bruton* and *Marsh*. While the introduction of the redacted statements alone may not have been clearly prohibited under the caselaw at that time, there is no doubt that the use of Cox's statements in the prosecutor's closing argument was a clear *Bruton* violation in that the statements were definitely used to incriminate Lee. The prosecution admitted as much.

## B.

The issue, then, is whether the prosecutor's use of the statements in his closing argument was nevertheless harmless. On this point, Judge Hey articulated and applied the proper standard: relief here is appropriate only if "the constitutional violation had a 'substantial and injurious effect' on the fairness of the trial." *Lee*, 2010 WL 5059517, at *13 (quoting *Fry*, 551 U.S. at 121; additional citations omitted). Under this standard, petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637 (citations omitted). But

7

"[w]hen a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,'" i.e., where the evidence is in "virtual equipoise," the "error is not harmless." *O'Neal v. McAninch*, 513 U.S. 432, 435-36 (1995).

Our review of the evidence leads us to conclude that Judge Hey reached the correct result. The evidence at trial, other than Cox's statements, consisted of the following:

- Officer Gerald Lynch testified about a knife and pair of scissors seized from Lee's mother's apartment, where Lee was found when arrested. There was no scientific or other evidence linking these weapons to the crime, other than expert testimony that, based on the nature of the wounds, they could have been the murder weapons. The knife was located on the night table beside the bed where Lee was sleeping; the scissors were found in a kitchen cabinet full of sewing materials.

- Sonya Brown, Evelyn Brown's daughter and Tina Brown's sister, testified that Lee and a second individual whom she did not know knocked on the door of the family's apartment between 7 and 8 p.m. the night of the murders asking to use the telephone. Sonya knew Lee because he had lived in the Browns' apartment with his girlfriend, although he had moved out about a year before the murders occurred. Upon being refused entry, one of the two individuals (Sonya was not sure which one) kicked the door and wrote on it "all you bitches, hit man butter" in magic marker. Sonya left

8

the apartment at approximately 10 p.m. to babysit at a friend's house and did not return until the next morning, after she learned from a phone call that her mother and sister had been killed.

- Denise Williams, a neighbor of the Browns' who knew who Lee was and recognized him, testified that, around 2 a.m., she saw Cox speaking to a female occupant through the Browns' closed apartment door. She testified, further, that Lee was standing off to the side with his back pressed up against the hallway, such that someone inside the Browns' apartment would not have been able to see him through the door's peephole.

- Samuel Gilbert, who lived in the Browns' apartment building, testified that Lee and Cox came to his apartment around 3:30 a.m. Gilbert had known Lee and his mother since Lee was young and had allowed Lee to stay with him occasionally after Evelyn Brown told him to move out. Lee woke Gilbert up and asked Gilbert to go into the bathroom with him while Cox remained at the door. Lee then told Gilbert that he "did something bad." When Gilbert asked whether Lee had robbed someone, Lee replied "no, I did something worse." He said, "I stabbed Evelyn." Lee stuffed some clothes he had been keeping at Gilbert's apartment into a plastic bag and told Gilbert he was going to his mother's house. Then Cox and Lee left the apartment. Gilbert also testified that Lee and Cox had been at his apartment earlier that evening and that, before they left, Lee said he needed

to make a telephone call. (The defense tried to attack Gilbert's credibility in several respects, but his testimony was not shaken on cross examination.)

- Upon returning to the apartment the next morning, Sonya Brown confronted a horrific sight. The victims were lying in pools of blood in separate bedrooms. Both victims had been bound, stabbed, slashed, and punctured repeatedly (53 and 48 times), and Tina Brown had been raped. We need not recount all of the details but suffice it to say they are gruesome.

- Police recovered a bar of blood-stained soap from a bathroom sink inside the Browns' apartment.

- Laboratory testing of Lee's clothes confirmed the presence of human blood on Lee's pants and shoes, although in amounts insufficient to permit blood-type testing with the technology then available.

Thus, even without Cox's statements, the evidence shows that Lee and Cox were together the entire evening and throughout the night of the murder and that Lee was not pleased when the Browns forbade him from entering their apartment. The description of the scene of the murders could easily lead the jury to conclude that this was the act of two people who both acted with the intent to kill. Indeed, it is clear that the jury actually determined as much, since it also convicted Cox of first-degree murder despite his statements blaming the murders solely on "X." Lastly, Gilbert's recounting of Lee's confession removes whatever doubt we may have had. There is no reason to doubt its veracity from a witness who testified consistently and did not want to hurt Lee. Given all

10

of these factors, we cannot conclude that the *Bruton* violation had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637-38 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

## IV.

Accordingly, we will affirm the order of the District Court.