J-S38035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PERCY LEE | : | |
| | : | |
| Appellant | : | No. 2100 EDA 2017 |

Appeal from the Judgment of Sentence September 20, 2005
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0511562-1986

BEFORE: OTT, J., DUBOW, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.: **FILED AUGUST 30, 2019**

Appellant, Percy Lee, appeals from the judgment of sentence of two terms of life imprisonment without parole, which was imposed at his resentencing on September 20, 2005, for his jury trial convictions for two counts each of murder of the first degree and possessing instruments of crime.[1] On June 1, 2017, the Court of Common Pleas of Philadelphia County entered an order reinstating Appellant's direct appeal rights *nunc pro tunc* following his second petition filed under the Post Conviction Relief Act ("PCRA").[2] We reverse the PCRA order, without prejudice for Appellant to revisit any claim pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012), and

---

[1] 18 Pa.C.S. §§ 2502(a) and 907, respectively.

[2] 42 Pa.C.S. §§ 9541–9546.

\* Retired Senior Judge assigned to the Superior Court.

*Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), and quash as untimely

Appellant's appeal from his judgment of sentence.

The facts underlying this appeal were previously set forth by the Supreme Court of Pennsylvania in ***Commonwealth v. Lee***, 662 A.2d 645, 648 (Pa. 1995). Thus, we have no reason to restate them. For the convenience of the reader, we briefly note that Appellant's convictions resulted from an incident that occurred between 2:00 A.M. and 3:30 A.M. on February 27, 1986, in which he and his co-defendant, Russell Cox, entered the apartment of Evelyn Brown and killed both her and her daughter, T.B.

"[Appellant] and Cox were tried jointly before a jury." ***Id.*** at 649. "At the conclusion of the penalty phase of [Appellant]'s trial, the jury returned a sentence of death for each of the two murder convictions." ***Id.*** at 648.

> [Appellant] filed a notice of appeal in the Pennsylvania Supreme Court. . . . In an opinion dated July 21, 1995, the Pennsylvania Supreme Court rejected [Appellant]'s claims and affirmed the judgment of sentence. [***Lee***, 662 A.2d 645.] . . .
>
> [Appellant] sought review in the United States Supreme Court. On May 20, 1996, the Supreme Court denied certiorari. ***Lee v. Pennsylvania***, 517 U.S. 1211, 116 S.Ct. 1831, 134 L.Ed.2d 935 (1996).
>
> [Appellant] filed a timely [first] petition pursuant to [the PCRA]. After appointing counsel . . . , the Honorable William J. Manfredi dismissed the PCRA petition. [***See*** PCRA Court Memorandum Opinion and Order, filed June 18, 2002.]
> . . .
>
> On July 17, 2002, [Appellant], through counsel, filed a notice of appeal in the Pennsylvania Supreme Court. On May 16, 2005, without considering the merits of his appeal, the Supreme Court of Pennsylvania remanded the case to the PCRA Court to permit [Appellant] to present a claim pursuant to the then recently

decided **Roper v. Simmons**, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).[3]  **Commonwealth v. Lee**, [873 A.2d 1285 (Pa. 2005)].  On September 2[0], 2005, Judge Manfredi vacated the sentence of death [and] sentenced [Appellant] to consecutive life sentences for the two murders[.]

**Lee v. Collins**, No. CIV.A. 09-4023, 2010 WL 5059517, at *2-*3 (E.D. Pa. July 22, 2010) (footnote omitted).  "Because [Appellant was] no longer sentenced to death, [Appellant]'s appeal of the June 18, 2002 Order denying his PCRA Petition was forwarded to this Court for disposition[,]" and it affirmed the order.  **Commonwealth v. Lee**, No. 586 EDA 2006, unpublished memorandum at 4 (Pa. Super. filed April 16, 2008).  Appellant petitioned for allowance of appeal to the Supreme Court of Pennsylvania, and his petition was denied on October 17, 2008.  He thereafter sought redress in the federal courts, where relief was denied.  **See Lee v. Shannon**, No. 09-CV-4023, 2010 WL 5059544, at *1 (E.D. Pa. Dec. 10, 2010) (adopting report and recommendation of **Lee v. Collins**, No. CIV.A. 09-4023), *aff'd sub nom.* **Lee v. Smeal**, 447 F. App'x 357 (3d Cir. 2011).

On August 23, 2012, Appellant, represented by the Federal Community Defender Office for the Eastern District of Pennsylvania, filed a PCRA petition, his second, raising the claim that his sentences of life imprisonment without

---

[3] **Roper** held "that the Eighth Amendment prohibits application of the death penalty to offenders who were younger than eighteen years of age at the time of the offense[.]" **Commonwealth v. Towles**, 208 A.3d 988, 1009 (Pa. 2019).  Appellant was 17 years old at the time of the crimes. **Commonwealth v. Cox**, 204 A.3d 371, 374 (Pa. 2019).

the possibility of parole were unconstitutional pursuant to **Miller v. Alabama**, 567 U.S. 460 (2012). Appellant conceded that his petition was untimely but contended that it qualified for one of the exceptions to the PCRA time bar pursuant to 42 Pa.C.S. § 9545(b)(1).[4] Specifically, Appellant argued that his petition qualified for an exception under § 9545(b)(1)(iii), "based upon a retroactively applicable constitutional right that was recognized by the United States Supreme Court" in **Miller**. PCRA Petition, 8/23/2012, at 4.

On December 23, 2013, Appellant filed a motion for leave to amend his PCRA petition, along with a copy of his proposed amended PCRA petition; nothing in the certified record or docket indicates that the PCRA court granted leave to amend.[5] On March 21, 2016, Appellant filed another motion for leave

_____

[4] The three exceptions to the PCRA timeliness requirement are:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii).

[5] This Court's Prothonotary confirmed with the Philadelphia Office of Judicial Records that no order granting amendment was in the trial court's record.

to amend, along with a copy of a proposed "second" amended PCRA petition adding that *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), now explicitly made *Miller* retroactive; again, nothing in the certified record or docket indicates that the PCRA court granted leave to amend.[6]  Both the proposed amended PCRA petition and the proposed second amended PCRA petition alleged the same timeliness exception as Appellant's 2012 PCRA petition.

On June 6, 2016, the PCRA court entered an order appointing the Defender Association of Philadelphia to represent Appellant.  The order did not explicitly grant leave to amend the PCRA petition.  Furthermore, the Defender Association of Philadelphia never filed anything on Appellant's behalf, and all of Appellant's subsequent filings were by the Federal Community Defender Office for the Eastern District of Pennsylvania.

On June 9, 2016, during the pendency of Appellant's PCRA petition, the United States Supreme Court issued *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016).  "In *Williams* the United States Supreme Court held that former [Supreme Court of Pennsylvania] Chief Justice [Ronald] Castille's failure to recuse in an appeal from a case in which he participated as district attorney

_____

[6] This Court's Prothonotary again confirmed with the Philadelphia Office of Judicial Records that no order granting amendment was in the trial court's record.

- 5 -

was a violation of Williams' due process rights." **Commonwealth v. Cox**, 204 A.3d 371, 390 n.19 (Pa. 2019).[7]

On August 8, 2016, Appellant requested leave to amend his PCRA petition, along with a copy of a proposed third amended PCRA petition. Nothing in the certified record or docket indicates that the PCRA court granted leave to amend.[8] The proposed third amended PCRA petition claimed that Appellant is entitled to the same remedy as Williams, because "Mr. Castille was the District Attorney at the time of [Appellant]'s capital prosecution and later participated as a justice in the Pennsylvania Supreme Court's adjudication of [Appellant]'s appeal." Proposed Third Amended PCRA Petition, 8/8/2016, at 2 ¶ 4 (citing **Williams**, 136 S. Ct. 1899; **Lee**, 662 A.2d 645). Appellant hence believed that, "[a]s a result of Justice Castille's personal involvement as both prosecutor and judge in this case, the Pennsylvania Supreme Court's decision in **Lee**, 662 A.2d 645, violated due process under the United States and Pennsylvania Constitutions." **Id.** at 11 ¶ 34.

The proposed third amended PCRA petition additionally pleaded that it "meets the requirements of all three exceptions" to the PCRA time bar --

> 9. This Third Amendment meets the requirements of 42 Pa. C.S. § 9545(b)(1)(i) & (ii) because the facts upon which it is predicated – District Attorney Castille's significant, personal

---

[7] **Williams** is discussed in more detail below.

[8] This Court's Prothonotary once again confirmed with the Philadelphia Office of Judicial Records that no order granting amendment was in the trial court's record.

involvement in this and other capital prosecutions – were suppressed by the Philadelphia District Attorney's Office and by Mr. Castille since the outset of this case. . . . *Williams* illuminates the factual basis, not previously known to [Appellant], to establish that, through their mischaracterizations of District Attorney Castille's role in capital prosecutions and through their failure to disclose documents and information reflecting his actual role, the Philadelphia District Attorney's Office interfered with [Appellant]'s ability to present this claim earlier. *See* 42 Pa. C.S. § 9545(b)(1)(i). Similarly, because of those non-disclosures and mischaracterizations, and because the Supreme Court only recently ruled that those mischaracterizations are not creditable, the facts upon which this claim is predicated could not have been ascertained earlier by the exercise of due diligence. *See* 42 Pa. C.S. § 9545(b)(1)(ii).

10. This Third Amendment also meets the requirements of 42 Pa. C.S. § 9545(b)(1)(iii) because it is being filed within 60 days of the *Williams* decision. *Williams* is retroactive on its face.

*Id.* at 4 ¶¶ 9-10.

At the same time, Appellant filed a motion for discovery, citing *Williams* and "seek[ing] disclosure of any authorization documents or other records in possession or control of the Philadelphia District Attorney's Office reflecting former District Attorney Castille's personal involvement in this case." Motion for Discovery, 8/8/2016, at 2. On March 20, 2017, the Commonwealth moved to dismiss Appellant's petition and attached to its motion a 1987 memorandum reflecting District Attorney Castille's approval of the request of the Deputy District Attorney of the Trial Division to seek the death penalty. Commonwealth's Motion to Dismiss, 3/20/2017, Exhibit B.

On May 18, 2017, Appellant filed another motion for leave to amend, along with a copy of his proposed fourth amended PCRA petition. The proposed fourth amended PCRA petition pleaded that Appellant's claims

qualified for the exceptions pursuant to § 9545(b)(1)(i) and (ii); it did not cite to § 9545(b)(1)(iii).  Proposed Fourth Amended PCRA Petition, 5/18/2017, at 2 ¶ 4.  The proposed petition further pleaded:

> The Commonwealth's recent, first-time disclosure of records reflecting Castille's personal decision to authorize this death penalty prosecution provides additional compelling factual bases for [Appellant]'s claim for relief.  The disclosure also strongly supports [Appellant]'s assertions that these factual bases were suppressed by the Philadelphia District Attorney's Office and by Mr. Castille for three decades, and that these facts were unknown and not ascertainable by [Appellant] during that time.

*Id.* at ¶ 5.  Once again, nothing in the certified record or docket indicates that the PCRA court granted leave to amend.[9]

On April 24, 2017, the PCRA court held a hearing.  *See* Trial Court Opinion, filed November 6, 2017, at 2.[10]

On June 1, 2017, the PCRA court entered an order granting Appellant's PCRA petition "and all amendments thereto . . . **IN PART**," pursuant to *Williams* only, "without prejudice" to revisit the *Miller* and *Montgomery* claim, if necessary, and reinstating Appellant's direct appeal rights *nunc pro tunc*.  Order, 6/1/2017 (emphasis in original).  The order additionally stated: "The [PCRA] court finds jurisdiction as [Appellant] has proven by a preponderance of evidence that 'the facts upon which the claim is predicated

---

[9] This Court's Prothonotary confirmed with the Philadelphia Office of Judicial Records that no order granting amendment was in the trial court's record.

[10] The certified record does not contain notes of testimony from the hearing.

were unknown to the petitioner and could not have been ascertained by the exercise of due diligence.' ***See*** [42] Pa. Cons. Stat. § 9545(b)(1)(ii)." ***Id.*** at n.1. The order makes no mention of 42 Pa.C.S. § 9545(b)(1)(i) or (iii). ***See generally id.*** On June 28, 2017, Appellant filed this appeal.[11]

Appellant presents the following issues for our review:

A. Did not the introduction and use of very incriminating statements of the non-testify[ing] jointly tried co-defendant violate [Appellant]'s Confrontation Clause rights?

B. Was not the prosecutor's closing argument replete with misconduct, that individually and collectively violated state law, due process and other constitutional rights?

C. Were not the trial court's instructions explaining the difference between direct and circumstantial evidence, and the examples given from Commonwealth witness testimony, prejudicially erroneous in violation of state law and due process protections?

D. Because the prior inconsistent statements under oath of a key witness were admissible as substantive evidence, did not the [trial] court clearly err by repeatedly telling the jury that the statements could not be considered for that purpose, but only for the limited purpose of evaluating credibility?

E. Is this not a case where not only the individual errors, but also cumulative error that violated state law and due process rights, entitle [Appellant] to a new trial?

F. Did not trial counsel act ineffectively in prejudicially failing to raise meritorious record based issues without any reasonable tactical basis?

---

[11] The trial court did not order and Appellant did not file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court entered its opinion on November 6, 2017, and entered a supplemental opinion on March 25, 2019.

G.     Did not post verdict/direct appeal counsel prejudicially provide ineffective assistance of counsel by failing to raise and preserve record based meritorious issues without any reasonable tactical basis?

Appellant's Brief at 3-4 (unnecessary capitalization omitted).

Preliminarily, we must determine whether the PCRA court had jurisdiction to grant PCRA relief to Appellant.  "As a threshold jurisdictional matter, however, the timeliness of the PCRA petition must be addressed.  Even where neither party nor the PCRA court have addressed the matter, it is well-settled that we may raise it *sua sponte* since a question of timeliness implicates the jurisdiction of our Court."  **Commonwealth v. Callahan**, 101 A.3d 118, 121 (Pa. Super. 2014); **see also Commonwealth v. Hernandez**, 79 A.3d 649, 651 (Pa. Super. 2013) (timeliness of a post-conviction petition is jurisdictional).   A "PCRA court ha[s] no jurisdiction to restore [an a]ppellant's direct appeal rights *nunc pro tunc* via [an] untimely petition." **Commonwealth v. Ballance**, 203 A.3d 1027, 1033 (Pa. Super. 2019).

"The question of whether a petition is timely raises a question of law, and where a petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Pew**, 189 A.3d 486, 488 (Pa. Super. 2018), *appeal denied*, *stay denied*, 200 A.3d 939 (Pa. 2019).

Generally, a petition for relief under the PCRA, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves" one of

the three exceptions to the time limitations for filing the petition set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii). "The PCRA petitioner bears the burden of proving the applicability of one of the exceptions." **Commonwealth v. Spotz**, 171 A.3d 675, 678 (Pa. 2017). Any petition attempting to invoke these exceptions "shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).[12]

In the current action, Appellant was resentenced on September 20, 2005; after this Court affirmed this judgment of sentence, Appellant petitioned for allowance of appeal to the Supreme Court of Pennsylvania, which was denied on October 17, 2008. Judgment of sentence thus became final 90 days after the Pennsylvania Supreme Court denied the petition – *i.e.*, on January 15, 2009. **See** U.S. Sup. Ct. R. 13. Appellant had one year thereafter to file a PCRA petition – *i.e.*, until January 15, 2010. 42 Pa.C.S. § 9545(b)(1). Appellant filed the current petition on August 23, 2012 -- more than two years late. Therefore, Appellant's petition was patently untimely.

In his 2012 PCRA petition, Appellant attempted to circumvent the time bar by asserting the exception under subsection 9545(b)(1)(iii) only. PCRA

---

[12] Section 3 of Act 2018, Oct. 24, P.L. 894, No. 146, changed the timeframe of 42 Pa.C.S. § 9545(b)(2) from 60 days to one year. The change was effective on December 24, 2018, and applied retroactively to claims arising on December 24, 2017, or thereafter. Appellant's instant PCRA petition was filed on August 23, 2012, and therefore prior to December 24, 2017. Thus, the expansion of time to file a claim to one year does not apply to the instant petition.

Petition, 8/23/2012, at 4 (citing **Miller**, 567 U.S. 460).  In his proposed third amended PCRA petition, Appellant maintained that his petition qualifies for all three exceptions to the PCRA time bar.  Proposed Third Amended PCRA Petition, 8/8/2016, at 4 ¶¶ 9-10 (citing 42 Pa.C.S. § 9545(b)(1)(i)-(iii); **Williams**, 136 S. Ct. at 1903).  His proposed fourth amended PCRA petition pleaded that his claims qualified for the first and second PCRA time-bar exceptions only, with no mention of the third exception.  Proposed Fourth Amended PCRA Petition, 5/18/2017, at 2 ¶ 4 (citing 42 Pa.C.S. § 9545(b)(1)(i)-(ii)).

However, Pa.R.Crim.P. 905(A) requires leave of court to submit an amended petition.  **See Commonwealth v. Rykard**, 55 A.3d 1177, 1189 (Pa. Super. 2012).[13]  Even though Appellant requested leave to amend his petition to add assertions as to subsection 9545(b)(1)(i) and (ii) and to alter his argument as to subsection 9545(b)(1)(iii), the PCRA court still had to have explicitly granted permission for amendment in order for these claims to be preserved.  **See** Pa.R.Crim.P. 905(A); **Rykard**, 55 A.3d at 1189.  Hence, the PCRA court should not have considered any pleading outside the 2012 PCRA petition without having expressly granted permission for Appellant to file any

_____

[13] **Rykard**, decided on September 18, 2012, pre-dates Appellant's first motion for leave to amend, filed December 23, 2013, and Pa.R.Crim.P. 905(A) has not changed since April 1, 2001.  Ergo, the requirement that a PCRA court must grant permission to amend a PCRA petition is not affected by the age of this case.

- 12 -

amended petitions. Thus, the order granting PCRA relief pursuant to Appellant's *Williams* claim was improper in its entirety. Furthermore, the PCRA court's finding of an exception to the time bar solely pursuant to subsection 9545(b)(1)(ii) – which was only raised in amended petitions which were not authorized by the PCRA court itself – was improper. *See* Order, 6/1/2017, at n.1; Proposed Third Amended PCRA Petition, 8/8/2016, at 4 ¶¶ 9-10; Proposed Fourth Amended PCRA Petition, 5/18/2017, at 2 ¶ 4.

Nevertheless, given the confusion at the PCRA court level and the fact that the PCRA court's order clearly stated that the court considered "all amendments" to Appellant's PCRA petition, we will analyze each of the timeliness exceptions in turn. Order, 6/1/2017.

### 42 Pa.C.S. § 9545(b)(1)(i)

Assuming Appellant's assertion of the exception under 42 Pa.C.S. § 9545(b)(1)(i) had been properly preserved, we would find such exception inapplicable to Appellant's action. Appellant's reliance on § 9545(b)(1)(i) is based on *Williams*, 136 S. Ct. 1899. Proposed Third Amended PCRA Petition, 8/8/2016, at 4. In *Williams*, as in the current action, "[o]ne of the justices on the State Supreme Court [that decided one of the defendant's appeals] had been the district attorney who gave his official approval to seek the death penalty in the prisoner's case." 136 S. Ct. at 1903. The underlying facts and procedural history of *Williams* were as follows:

> In 1984, soon after Williams turned 18, he murdered 56–year–old
> Amos Norwood in Philadelphia. At trial, the Commonwealth

- 13 -

presented evidence that Williams and a friend, Marc Draper, had been standing on a street corner when Norwood drove by. . . . Testifying for the Commonwealth, Draper suggested that robbery was the motive for the crime. . . .

In 2012, Williams filed a successive petition pursuant to [the PCRA]. The petition was based on new information from Draper, who until then had refused to speak with Williams's attorneys. . . . Draper . . . admitted he had received an undisclosed benefit in exchange for his testimony: the trial prosecutor had promised to write a letter to the state parole board on his behalf. . . .

Williams alleged in his petition that the prosecutor had procured false testimony from Draper and suppressed evidence regarding Norwood's sexual relationship with Williams. . . . The PCRA court ordered the district attorney's office to produce the previously undisclosed files of the prosecutor and police. These documents included the trial prosecutor's sentencing memorandum, bearing then-District Attorney Castille's authorization to pursue the death penalty.

*Id.* at 1903-04. The PCRA court then granted relief in the form of a new sentencing hearing, but the Commonwealth filed an application to vacate the stay of execution in our Supreme Court to which Justice Castille had by then been elected. *Id.* at 1904-05. Williams responded with a motion asking Justice Castille to recuse himself based upon his prior involvement in the case, but Justice Castille refused to grant the motion or to refer it to the full Court for decision. The Pennsylvania Supreme Court ultimately vacated the PCRA court's order and reinstated Williams's death sentence.

Williams appealed to the United States Supreme Court, claiming that his due process rights were violated by Justice Castille's adjudicating the petition to overturn his sentence after having made the decision as District Attorney to seek the death penalty. *Id.* at 1905. The United States Supreme Court

agreed with Williams, holding that "Justice Castille's significant, personal involvement in a critical decision in Williams's case gave rise to an unacceptable risk of actual bias." *Id.* at 1908.

The **Williams** case was decided on June 9, 2016. Appellant first filed his current PCRA petition in 2012, predating **Williams**. Assuming, for argument's sake, that we utilize the date that Appellant filed his motion for leave to amend his second amended PCRA petition and proposed third amended PCRA petition, August 8, 2016, Appellant filed exactly 60 days after **Williams** was decided. *See* 42 Pa.C.S. § 9545(b)(2).

After receiving the Commonwealth's motion to dismiss, with the 1987 memorandum reflecting then-District Attorney Castille's approval to seek the death penalty for Appellant, Commonwealth's Motion to Dismiss, 3/20/2017, Exhibit B, Appellant filed another motion for leave to amend with a proposed fourth amended PCRA petition, alleging that "these factual bases were suppressed by the Philadelphia District Attorney's Office and by Mr. Castille for three decades, and that these facts were unknown and not ascertainable by [Appellant] during that time." Proposed Fourth Amended PCRA Petition, 5/18/2017, at 2 ¶ 5. However, Appellant provides no proof of his allegations of suppression and of the ascertainability of the facts underlying his claim, beyond his bald assertions. The fact that former District Attorney Castille was on the Supreme Court of Pennsylvania was readily ascertainable when our Supreme Court affirmed Appellant's judgment of sentence in 1995.

Nevertheless, nowhere in Appellant's proposed third or fourth amended PCRA petitions did Appellant contend that he had at any point prior to filing his motion for discovery on August 8, 2016 requested the memorandum or similar documents that the Commonwealth produced in response to said motion. Thus, "government officials" could not have "interfere[d]" with or "suppressed" what was never requested. **See** 42 Pa.C.S. § 9545(b)(1)(i); Proposed Fourth Amended PCRA Petition, 5/18/2017, at 2 ¶ 5.

Appellant has also failed to identify any "mischaracterization" of Justice Castille by the Office of the Philadelphia District Attorney that somehow deceived him into declining to investigate any conflict. **See** Proposed Third Amended PCRA Petition, 8/8/2016, at 4 ¶¶ 9-10.

Hence, there are no averments of fact suggesting that Appellant made **any** efforts in the two decades prior to the filing of his motion for discovery in 2016 to ascertain District Attorney/Justice Castille's potential conflict of interest due to his involvement in Appellant's case, to say nothing of allegations that such attempts were frustrated by governmental suppression of this information or other interference. Thus, the proposed petitions fail to "allege[]" and Appellant has failed to "prove[]" the governmental interference exception to the PCRA's time bar pursuant to 42 Pa.C.S. § 9545(b)(1)(i). **See also Spotz**, 171 A.3d at 678.

## 42 Pa.C.S. § 9545(b)(1)(ii)

The trial court "found . . . the newly discovered fact exception was triggered by the June 9, 2016 **Williams** decision." Trial Court Opinion, filed November 6, 2017, at 14. The trial court explained its reasoning as follows:

> [The trial] court determined [Appellant] met the timeliness requirement for the newly-discovered fact exception when he filed a petition on August 8, 2016, within sixty (60) days of the **Williams** June 9, 2016 decision - a judicial decision which provided a new theory or method of obtaining collateral relief. [The trial] court determined the clock began to run after publication of the **Williams** decision, as the decision was the factual predicate for the constitutional claims raised in [Appellant]'s PCRA petition. Evidence of Justice Castille's involvement in [Appellant]'s case, and specifically his authorization to seek the death penalty against [Appellant], did not come to light until the **Williams** decision elucidated the significance of District Attorney Castille's signature on the death penalty request memorandum. . . . [The trial] court found the issuance of the **Williams** opinion triggered the newly discovered fact exception because [Appellant] was unaware that Justice Castille was significantly and personally involved in a critical trial decision in [Appellant]'s case until the Supreme Court of the United States declared it to be so in its **Williams** decision. **Id.** at 1906.
>
> Further highlighting how **Williams** served as a factual trigger, it was not until twenty-two (22) years after the Supreme Court of Pennsylvania, including Justice Castille, affirmed [Appellant]'s conviction and death sentence and nine (9) years after denying [Appellant]'s petition for allowance of appeal, that the Commonwealth produced the District Attorney's signed death penalty request in these PCRA proceedings which are based on the **Williams** decision.

**Id.** at 12-13.

Assuming *arguendo* that we could consider Appellant's attempt to invoke the "newly-discovered fact" exception at subsection 9545(b)(1)(ii), we would disagree with the trial court's analysis. Primarily, we find Appellant's

contention unsupportable, because judicial decisions do not constitute "newly-discovered facts." *See Commonwealth v. Watts*, 23 A.3d 980, 987 (Pa. 2011) ("subsequent decision law does not amount to a new 'fact' under section 9545(b)(1)(ii) of the PCRA"); *Commonwealth v. Brandon*, 51 A.3d 231 (Pa. Super. 2012) (subsequent decisional law does not constitute new "fact" per § 9545(b)(1)(ii)).

Additionally, we believe that *Williams* is ultimately not controlling. In *Williams*, the appellant was specifically challenging the reinstatement of his death sentence by the Supreme Court of Pennsylvania, where the panel rendering said decision included the individual who had authorized the Commonwealth to seek the death penalty in the first place – *i.e.*, Ronald Castille, the former District Attorney of Philadelphia who was then serving as a justice on the Pennsylvania Supreme Court. There, the conflict of interest was clear.

In the current action, District Attorney Castille's only involvement in Appellant's case was granting his authorization to seek the death penalty. However, Appellant was resentenced to life imprisonment. Without a death sentence, it is as if District Attorney Castille's sole role in Appellant's matter had never transpired. For this reason, the current appeal can be distinguished from *Williams*. Hence, Appellant's and the trial court's reliance on *Williams* is inapposite, and, contrary to the PCRA court's conclusions, it cannot serve as the basis for an exception to the PCRA time bar for Appellant's petition.

Finally, even if **Williams** were completely on point, 42 Pa.C.S. § 9545(b)(1)(ii) requires that "the facts upon which the claim is predicated . . . could not have been ascertained by the exercise of due diligence[.]" Appellant failed to establish due diligence for the same reason that he failed to establish that the Commonwealth interfered with his ability to obtain the 1987 memorandum reflecting District Attorney Castille's approval of the request to seek the death penalty – *i.e.*, that Appellant provided no averments that he had made any effort prior to his August 2016 motion for discovery to ascertain District Attorney Castille's involvement in his case.

Accordingly, the PCRA court should not have found an exception to the time bar solely based on subsection 9545(b)(1)(ii). **See** Order, 6/1/2017, at n.1.

### 42 Pa.C.S. § 9545(b)(1)(iii) relying upon **Williams**[14]

To the extent that Appellant now attempts to invoke the "new constitutional right" exception predicated upon **Williams** instead, despite his

---

[14] Appellant's 2012 PCRA petition had alleged that the claims therein qualified for an exception to the time bar "based upon a retroactively applicable constitutional right that was recognized by the United States Supreme Court" in **Miller**, 567 U.S. 460. PCRA Petition, 8/23/2012, at 4. In its supplemental opinion, the trial court stated: "Inasmuch as [Appellant] filed a PCRA petition raising a claim pursuant to **Miller**/**Montgomery**, [the trial court], in accordance with First Judicial District General Court Regulation No. 1 of 2016, continued to monitor the status of his pending direct appeal." Trial Court Opinion, filed March 25, 2019, at 3. Our instant decision makes no determination as to the propriety of granting Appellant PCRA relief pursuant to **Miller** and **Montgomery**.

assertion in his Proposed Third Amended PCRA Petition, 8/8/2016, at 4 ¶ 10, that "***Williams*** is retroactive on its face[,]" Appellant has not established that ***Williams*** announced **a new constitutional right** held to apply retroactively. ***See*** 42 Pa.C.S. § 9545(b)(1)(iii) ("the right asserted is a constitutional right that . . . has been held . . . to apply retroactively").

\* \* \*

For the reasons given above, Appellant failed to satisfy a timeliness exception pursuant to 42 Pa.C.S. § 9545(b)(1)(i), (ii), **or** (iii). Accordingly, the PCRA court lacked jurisdiction to grant Appellant relief in the form of reinstatement of his direct appeal rights *nunc pro tunc*. ***See Ballance,*** 203 A.3d at 1033**;** ***Callahan***, 101 A.3d at 121; ***Hernandez***, 79 A.3d at 651. Consequently, we reverse the PCRA court's order dated June 1, 2017.

In the absence of a valid reinstatement of Appellant's direct appeal rights, his appeal from his judgment of sentence entered pursuant to his resentencing on September 20, 2005, is untimely and must be quashed. ***See*** Pa.R.Crim.P. 720(A) (notice of appeal from judgment of sentence must be filed within 30 days of the imposition of sentence or the denial of post-sentence motions). Consequently, we reverse the PCRA court's order dated

June 1, 2017, without prejudice for Appellant to revisit any claim pursuant to

**_Miller_** and **_Montgomery_**.[15]

_____

[15] Even if we had found the reinstatement of Appellant's direct appeal rights to be valid and were to consider Appellant's issues raised on appeal, we would still find that Appellant's claims on appeal merit no relief.  **_See_** Appellant's Brief at 3-4 ¶¶ A.-G. & 20-37 (argument for first issue), 37-52 (argument for second issue), 52-56 (argument for third issue), 56-61 (argument for fourth issue), 61-62 (argument for fifth issue), 63-70 (argument for sixth issue), 70-77 (argument for seventh issue).

First, we would agree with the Pennsylvania Supreme Court that admission of Cox's confession did not deprive Appellant of his Sixth Amendment right of confrontation, where Cox's statements were redacted and contained no explicit references to Appellant and where "the trial court gave a limiting instruction in its charge to the jury which cautioned that Cox's statements were to be considered as evidence against him alone." **_Lee_**, 662 A.2d at 651–52 (citations to the record omitted).

Next, we would agree with the United States District Court for the Eastern District of Pennsylvania that, although Appellant is correct that the prosecutor relied on Cox's statements to bolster other evidence against Appellant and that, "[w]hen viewed in the context of the testimony presented at trial, these reliances on Cox's statements to prove [Appellant]'s guilt" rose to the level of prosecutorial misconduct, Appellant "failed to show" that the violation "had a substantial and injurious effect on the fairness of his trial" and was thereby harmless. **_Lee v. Collins_**, No. CIV.A. 09-4023, 2010 WL 5059517, at *12-*16, _report and recommendation adopted sub nom._ **_Lee v. Shannon_**, No. 09-CV-4023, 2010 WL 5059544, _aff'd sub nom._ **_Lee v. Smeal_**, 447 F. App'x 357.

As for Appellant's third issue – that the trial court erroneously instructed the jury on the difference between direct and circumstantial evidence and provided prejudicial examples thereof – Appellant withdrew his objections to these instructions at trial and thus failed to preserve this challenge.  N.T. Trial, 5/19/1987, at 2188-89.

Appellant also failed to raise any objection to the jury charge about prior inconsistent statements at trial, and his fourth challenge on appeal is thus waived.  **_See_** Pa.R.A.P. 302(a); Pa.R.Crim.P. 647(C).

- 21 -

As for Appellant's contention that "cumulative error" merits a new trial, we note that "no number of failed [ ] claims may collectively warrant relief if they fail to do so individually." **Commonwealth v. Spotz**, 47 A.3d 63, 129 (Pa. 2012).

As for Appellant's claim of ineffective assistance of trial counsel, even if we were to find that Appellant's underlying claims had arguable merit and that his trial counsel had no reasonable basis for his actions or inactions, Appellant still would be unable to establish prejudice, given the remaining overwhelming evidence of his guilt. **See Commonwealth v. Medina**, 209 A.3d 992, 1000 (Pa. Super. 2019) (citation omitted) (three-prong test that an appellant must satisfy to establish ineffectiveness). Even if Appellant had established that his trial counsel should have objected to prosecutorial misconduct during closing arguments and to instructions that erroneously misinformed the jury about direct and circumstantial evidence and about the proper use of the prior inconsistent statements of Commonwealth witness Samuel Gilbert, **see** Appellant's Brief at 67-70, Appellant still would have been incapable of proving that there was a reasonable probability of a different outcome if not for trial counsel's errors. **See Medina**, 209 A.3d at 1000 ("prejudice" for purposes of establishing ineffectiveness, mean that "there was a reasonable probability of a different outcome if not for counsel's error").

Even a cursory overview of the Commonwealth's case demonstrates evidence of Appellant's guilt beyond a reasonable doubt: Sonya Brown, the daughter of Evelyn Brown, testified as to Appellant's motive for the killings and provided a description of Evelyn Brown's body in the apartment the next morning; Denise Williams, a neighbor to the Browns, testified about Appellant's presence at the scene of the crime; multiple police officers testified about the positions of both victims' bodies and the bindings on their arms and legs; the arresting officer testified about Appellant's inconsistent statements to police about his whereabouts at the time of the murders; the assistant medical examiner testified as to the time of death, the position of the bodies, the bindings on the bodies, the evidence that T.B. had been raped, stabbed 20 times, punctured 29 times, and slashed four times, and the evidence of 23 stab wounds, 23 puncture wounds, two slash wounds, five scrapes, and one bruise on Evelyn Brown's body; and the forensic evidence that Appellant's pants and sneakers at the time of his arrest contained a small amount of human blood, albeit too small for DNA analysis. N.T. Trial, 4/27/1987, at 488-93, 495-97, 502, 542-48; N.T. Trial, 4/28/1987, at 596-97, 646-49, 630-34; N.T. Trial, 4/30/1987, at 917-23, 976-77, 985, 992-93, 1000; N.T. Trial, 5/4/1987, at 1188, 1190, 1197-1204, 1209-12; **see also Lee**, 662 A.2d at

PCRA order reversed without prejudice to revisit any ***Miller*** or ***Montgomery*** claim.  Appeal quashed.

Judge Dubow joins in the Memorandum.

Judge Ott concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/19

---

649. (This summary excludes all of Gilbert's evidence, giving Appellant the benefit of the doubt that the improper instruction on prior inconsistent statements somehow rendered all of Gilbert's testimony erroneously admitted.)

Thus, even without trial counsel's alleged errors, the evidence was so overwhelming that the outcome of the trial would not have changed. Furthermore, had Appellant's direct appeal rights been properly reinstated *nunc pro tunc*, then his claim of ineffective assistance of his first direct appeal counsel would be rendered moot, as he would be receiving an entirely new direct appeal.

For these reasons, had we agreed with the PCRA court that it had jurisdiction to grant PCRA relief and to reinstate Appellant's direct appeal rights *nunc pro tunc*, we still would have concluded that none of Appellant's questions raised on appeal merit relief.  ***See*** Appellant's Brief at 3-4 ¶¶ A.-G. & 20-77.